UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

**Hon. Hugh B. Scott**

07CR66

(CONSENT)

JOHN E. WEISBERG,

**Order**

Defendant.

Before the Court are defendant's objections to the Presentence Investigation Report ("PSR") and request to set the proper Sentencing Guidelines offense level for defendant (Docket No. 91[1], Def. Objections at 1-2, 2 n.1). This case was scheduled for sentencing on May 28, 2008, before the undersigned (text notice, entered Mar. 14, 2008; Docket No. 88), but the Court heard argument of this issue on that date (Docket No. 94) after the Government briefed this issue by May 16, 2008 (Docket No. 94). In this Order, the Court will reschedule the balance of the sentencing submissions and the new sentencing date.

## BACKGROUND

Defendant was tried for four counts of failure to file a tax return for the tax years 2000 to 2003, in violation of I.R.C. § 7203, and was convicted on three of the four counts (for tax years 2000, 2001, and 2003); the jury was unable to reach an unanimous for tax year 2002.

---

[1] In support of his objections, defendant files his attorney's affirmation with exhibits, Docket No. 92. The Government filed it response with exhibits, Docket No. 93.

The PSR recommends an enhancement for obstruction due to defendant's purported perjury during the trial. The report indicates that defendant lied about his knowledge of his obligation to file tax returns following receipt of a manual from American Asset Protection, that the American Asset Protection's definition of a "person" for tax purposes only included corporations, when defendant would file his 2003 return, and whether he knew John Ellis of American Asset Protection was indicted (<u>see</u> Docket No. 91, Def. Memo. at 5-8).

Defendant contends that the PSR recommends a two-level enhancement pursuant to Guidelines § 3C1.1 for obstruction, that the PSR recommends denying credit for acceptance of responsibility under § 3E1.1, and that the PSR uses the 2007 version of the Guidelines rather than an earlier, more lenient version (Docket No. 91, Def. Objections at 2-3). He argues that the pre-2001 version of the Guidelines' tax provisions should be used, otherwise applying the 2007 version would violate his <u>ex post facto</u> clause rights (<u>id.</u> at 3, 13-16). He concludes that the appropriate total offense level should be 13, rather than 18 as proposed in the PSR (<u>id.</u> at 3), or 15 as the base offense level without enhancements or reductions (<u>see id.</u> at 16).

According to defendant's calculation, using the pre-2001 Guidelines tax provisions, his base offense level would be 15 (<u>id.</u> at 3). He seeks to not have a two-level enhancement imposed for alleged obstruction, and also seeks a two-level reduction for acceptance of responsibility, reducing the total level to 13 (<u>id.</u> at 2-3).

On the acceptance of responsibility, defendant points to several instances in which he has accepted responsibility (such as his letter of acceptance sent to the Probation Department, his admissions to IRS agents, his cooperation with investigating agents, plea negotiations, offers to

stipulate to admission of evidence and streamlining the trial issues to boil it down to defendant's intent) to show that he deserves that reduction (id. at 10-13).

## DISCUSSION

I.   Appropriate Sentencing Guidelines Offense Level

   A.   Booker

The Supreme Court in United States v. Booker held that the Sentencing Guidelines can not be imposed mandatorily consistent with the Sixth Amendment rights of defendants, United States v. Booker, 543 U.S. 220, 244-67, 259 (2005) (opinion of Breyer, J.). This Court, however, must still "consult with those Guidelines and take them into account when sentencing," id. at 264; see United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005). As a result, the Court must begin the sentencing process by considering what the Guidelines range would be for defendant's offense, even though the statutory mandatory sentence for a § 7203 violation is one year in prison, I.R.C. § 7203; cf. U.S. Sentencing Guidelines Manual §§ 1B1.2(a), 1B1.9 (2007) (Sentencing Guidelines do not apply to Class B misdemeanors, of up to six months) (hereinafter cited as "Sentencing Guidelines"); United States v. Maul, 205 Fed. Appx. 456 (7th Cir. 2006) (defendant sentenced to 1year for class A misdemeanor, less than Guideline range for offense).

But the cases revising the federal sentencing landscape, leading to and including Booker, involved how a judge could impose a Guidelines sentence beyond the maximum from the evidence adduced at trial consistent with the Sixth Amendment. Starting with Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), through Blakely v. Washington, 542 U.S. 296 (2004), and to Booker itself, 543 U.S. 220, the Supreme Court has held that the Sixth Amendment requires evidence before the jury and proof beyond a reasonable doubt to exceed a maximum sentence.

The Booker Court recognized that the trial judge still retains "broad discretion in imposing a sentence within a statutory range," 543 U.S. at 233 (opinion of Stevens, J.) (citing Apprendi, supra, 530 U.S. at 451) (emphasis added), "for when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant," id. As later noted by the Second Circuit, elements of an offense are distinct from facts relevant to sentencing, "elements of an offense must be tried to a jury, but facts relevant to sentencing may be found by a judge, within the constraints of the Sixth Amendment," United States v. Vaughn, 430 F.3d 518, 526 (2d Cir. 2005). This comes into play later in discussing the relevant conduct and the appropriate version of the Guidelines applicable for this case.

Additionally, the limited criminal jurisdiction of a Magistrate Judge restricts the range of any sentence imposed. The Magistrate Judge has the power to conduct trials under 18 U.S.C. § 3401, that is, trials of class A misdemeanors, and the power to sentence class A misdemeanors where the parties have consented to proceed as such (cf. Docket No. 71), 28 U.S.C. § 636(a)(3), (5).

    B.    Guidelines and Tax Offenses

To determine the Guideline offense level for tax offenses, the base offense level is calculated by looking at the tax table for the tax loss involved, Sentencing Guidelines § 2T1.1(a)(1). "If the offense involved failure to file a tax return, the tax loss is the amount of tax that the taxpayer owed and did not pay," id. § 2T1.1(c)(2). The Guidelines note that "if the offense involved failure to file a tax return, the tax loss shall be treated as equal to 20% of the

gross income . . . less any tax withheld or otherwise paid, unless a more accurate determination of the tax loss can be made," id. § 2T1.1(c)(2) notes (A).

According to the evidence at trial, defendant's gross income in the tax years of conviction were $88,867 in 2000, $6,946 in 2001, and $63,349 in 2003. Twenty percent of the gross incomes for these years totals $31,632.40, and, under the 2007 Guidelines tax table, the offense level for that tax loss is 14, id. § 2T4.1(E), but the PSR considers relevant conduct of the tax years prior to the ones charged in the Indictment, raising the level to 16. The PSR appears to recommend a two-level enhancement for obstruction, raising the offense level to 18, and recommends not crediting defendant with acceptance of responsibility. Including tax year 2002 and its loss of $13,462.40, the total tax loss is $45,094.80. Under the 2007 tax table, the offense level remains at 14, id. § 2T4.1(E).

The Court also could consider the tax loss for years not charged in the Indictment (here 1995-99) and the year the jury did not reach a verdict upon (2002) as relevant conduct, see United States v. Meek, 998 F.2d 776, 781-82 (10th Cir. 1993). While the Tenth Circuit in Meek upheld use of non-charged tax years as relevant conduct to determine the offense level in a failure to file case and the Government there provided evidence of the non-filing during those tax years, id. at 782, 778, that decision predated Booker and its requirement that the jury find the facts to support the relevant conduct.

Since the sentence must be within the range of a class A misdemeanor (up to one year), the relevant conduct considered in imposing that sentence need not be found by a jury, see Booker, supra, 543 U.S. at 233. The Court may find relevant conduct by the preponderance of the evidence, see Vaughn, supra, 430 F.3d at 526-27. Further complicating this is the fact that in

one of the four charged tax years, the jury did not return a verdict. But the Second Circuit in Vaughn held that the sentencing judge may consider even acquitted conduct as relevant conduct in sentencing, id., "[c]onsistent with [the obligation to find facts by the preponderance of the evidence], district courts may find facts relevant to sentencing by a preponderance of the evidence, even where the jury acquitted the defendant of that conduct, as long as the judge does not impose (1) a sentence in the belief that the Guidelines are mandatory, (2) a sentence that exceeds the statutory maximum authorized by the jury verdict, or (3) a mandatory minimum sentence under § 841(b) not authorized by the verdict," id.

As a practical matter, this Court can only sentence defendant for a maximum of one year for each count of conviction. Under Guidelines § 3D1.2(d), the three counts are grouped together, see id. (including offenses under §§ 2T1.1, 2T1.4 for grouping together). The Guidelines, however, determine whether defendant's multiple counts will be served consecutively or concurrently. Under Sentencing Guidelines § 5G1.2(d), "if the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment," id. (emphasis added). "Total punishment" is the combined length of sentences found from the adjusted combined offense level and the defendant's criminal history category, id. cmt. n.1. Here, under the PSR the total punishment would be 27 to 33 months, if defendant's objections are accepted, that punishment would be 12 to 18 months[2]. Both calculations of the total

---

[2]The PSR and Government's calculation of an offense level of 18 and a criminal history category of I while defendant's calculation of an offense level of 13 with the same criminal history level both have sentences within Zone D, precluding probation, Sentencing Guidelines

punishment exceeds the statutory maximum for defendant's offense, hence the three counts would be served **consecutively**. The question remains how long that total punishment would be.

      C.      Version of Sentencing Guidelines Applicable

Although defendant argues this as his third and last objection (see Docket No. 91, Def. Objections at 3, 13-16), the version of the Guidelines applicable here dictates the results of the other objections and the calculation of defendant's Guidelines sentence. Thus, the Court will address this issue first.

Defendant argues that the conduct alleged is pre-2001 (starting from 1995), hence the November 2007 version of the Guidelines (using tax tables adopted in 2001) is inapplicable because ex post facto considerations (Docket No. 91, Def. Objections at 13-14). The PSR takes into consideration the tax losses from 1995 to 2003, with a total tax loss of $143,684, the majority of which ($114,094) occurred before 2001 (id.). Defendant calculates that, under the appropriate tax table, his offense level should only be 15.

The Government argues that the PSR appropriately used the November 1, 2007, version of the Sentencing Guidelines, arguing that the relevant tax table within those guidelines were promulgated in 2001 (Docket No. 93, Gov't Response at 19-26, 19-20, Ex. (Sentencing Guidelines § 2T4.1, Tax Table). Two of the three counts of conviction here occurred after November 2001, when the new tax table was in effect (id. at 20-21). Adhering to this Circuit's "one book rule," see United States v. Santopietro, 166 F.3d 88 (2d Cir. 1999); United States v. Broderson, 67 F.3d 452 (2d Cir. 1995); Sentencing Guidelines § 1B1.11(b)(2), that latest version of the Guidelines applies, Sentencing Guidelines § 1B1.11(a), (b)(3) (id. at 20). The Court

---

§§ 5C1.1(f), 5B1.1, cmt. n.2; see PSR ¶ 65.

would apply an earlier version of the Guidelines only if it finds that apply the current edition would violate the ex post facto clause of the Constitution, id. § 1B1.11(b)(1). The Government argues that no ex post facto problem exists in applying the current edition of the Guidelines to defendant's sentence. First, the Government contends that two of the three counts of conviction occurred after November 2001 and the more stringent tax table. Thus, defendant was on notice that any tax offense committed after November 2001 would face the more stringent tax table. (Id. at 20-21.) The Government argues that this case is analogous to United States v. Sullivan, 255 F.3d 1256, 1262-63 (10th Cir. 2001), where the Tenth Circuit (citing other circuits) held that there was no ex post facto problem in imposing the later version of the Guidelines on both pre- and post-enactment offenses, when one offense occurred after the effective date of that new version, under grouping provisions of the Guidelines as well as the use of prior years as relevant conduct for later (post-change) years (id. at 21-23). The Government contends that the Ninth Circuit's anomalous decision in United States v. Ortland, 109 F.3d 539, 547 (9th Cir. 1997), cert. denied, 522 U.S. 851 (1997), nevertheless supports applying the later version of the Guidelines at least to the offense that occurred after its effective date while using the earlier (pre-amended) offenses as relevant conduct for the latter offense (id. at 24-25).

     As applied here, since the 2001 and 2003 tax years occurred after amendment to the Guidelines tax tables (as well as the relevant conduct from the 2002 tax year), the newer, more stringent tables apply to those counts, as well as to the count for the 2000 tax year and the unindicted relevant conduct of the 1990s (id. at 23, Ex. 6), see Sentencing Guidelines § 1B1.3(a). As noted by the Tenth Circuit in Sullivan, there is a split in the circuits on whether Guidelines § 1B1.11(b)(3) violates the ex post facto clause, 255 F.3d at 1260-62, and the Second Circuit has

not ruled on this issue, although (as defendant notes) the United States District Court for the Northern District of New York held that § 1B1.11(b)(3) offends the ex post facto clause, see United States v. Johnson, Nos. 97-CR-206, 98-CR-160, 1999 WL 395381, at *9-11 (N.D.N.Y. June 4, 1999) (McAvoy, Ch. J.), aff'd on other grounds, 221 F.3d 83 (2d Cir. 2000) (Docket No. 91, Def. Objections at 14). This Court adopts the rationale of the Tenth Circuit and Sullivan. The Northern District of New York's case is factually distinguishable since the defendant there was convicted of "multiple discrete acts" that occurred before and after changes in the Sentencing Guidelines, 1999 WL 395381, at *10, leading that court to apply the earlier version of the Guidelines to a subset of the offenses, id. at *10, *11. The Ninth Circuit's decision in Ortland, relied upon by defendant here (Docket No. 91, Def. Objections at 14-15, 15) and by the Northern District of New York in Johnson, see 1999 WL 395381, at *9, did not consider the effect of prior relevant conduct in determining which version of the Guidelines were applicable, cf. 109 F.3d at 546 (noting district court's handling of issue by its analogizing this to relevant conduct analysis). Thus, the Court will look to the **current November 2007 Guidelines** (with its tax tables, effective November 2001) for defendant's conduct.

Part of this analysis depend upon what constitutes that tax loss. If the PSR is to be accepted and all relevant conduct is considered (even the tax year that the jury did not reach a verdict upon, see also Vaughn, supra, 430 F.3d at 526-27), the tax loss from 1995 to 2003 would be $143,684, within the range of $120,000 to $200,000 under the pre-2001 tax table, or exceeding $80,000 under the current November 2007 table, cf. Sentencing Guidelines Amend. 617 (effective Nov. 1, 2001), Sentencing Guidelines § 2T4.1(F) (Nov. 2007). In determining the total tax loss attributable to the offense, "all conduct violating the tax laws should be considered

9

as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct in clearly unrelated," U.S. Sentencing Guidelines Manual § 2T1.1 cmt. n.2 (2007).

As defendant argues, under the pre-2001 table, the unadjusted base offense level for a tax loss between $120,000 and $200,000 would be 15; under the current 2007 table, the base offense level for a tax loss over $80,000 would be 16. Assuming defendant has a criminal history category of I (as noted in the PSR, ¶ 57), and no further adjustment are made to the base offense levels, an offense level of 15 has a sentencing range of 18 to 24 months and an offense level of 16 has a sentencing range of 21 to 27 months. **The Court shall apply the current, 2007 edition of the Guidelines upon defendant** and **reject** defendant's objection on this ground. With the total tax loss considered as relevant conduct, defendant is at offense level **16**.

D.  Enhancement for Obstruction

Defendant objects to enhancing his base offense level for obstruction (Docket No. 91, Def. Objections at 3-8). He contends that the elements for perjury have not been established to support the enhancement for obstruction (id.) and that the PSR's conclusory statement that perjury constitutes obstruction of justice is not sufficient (id. at 5).

The PSR points to several instances of alleged perjury. First, the Report contends that defendant testifying that he denied knowing of his obligation to file tax returns was perjurious. The Government points out that defendant's perjury here was reinforced by defendant's post-conviction statement to probation, indicating his acceptance of responsibility, where he states that he knew that it was his duty as a citizen to file tax returns (Docket No. 93, Gov't Response at 5-6). The PSR next considers defendant's testimony regarding the tax code's definition of

"person" and defendant's reliance upon other persons' definition to avoid including him as being required to file tax returns. Next, the PSR states that defendant was on notice from an American Rights Litigators' ("ARL") newsletter that ARL's arguments were frivolous. The PSR considers perjury defendant's testimony that he was waiting for a response from his accountant, Bonnie Phillips, before filing his 2003 tax return. Finally, the PSR deems perjury defendant's testimony that he did not know ARL's John Ellis was under indictment. (See Docket No. 91, Def. Objections at 6-8.)

The Supreme Court has noted that "not every accused who testifies at trial and is convicted will incur an enhanced sentence under § 3C1.1 for committing perjury. As we have just observed, an accused may give inaccurate testimony due to confusion, mistake or faulty memory . . . . Her testimony may be truthful, but the jury may nonetheless find the testimony insufficient to excuse criminal liability or prove lack of intent," United States v. Dunnigan, 507 U.S. 87, 95 (1993). This Court needs to review the evidence of alleged perjury and "make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition" set out by the Supreme Court, id. (Docket No. 91, Def. Objections at 3-4.) Even if the proffered statements are seen to be perjurious, the Government fails to show that defendant willfully obstructed justice in making the statements, see United States v. Canova, 412 F.3d 331, 357 (2d Cir. 2005). Therefore, the enhancement for obstruction is **not applicable here** and defendant's objection on this ground is **accepted**.

E.     Acceptance of Responsibility

Next, defendant objects that the PSR does not credit his acceptance of responsibility merely because this case went to trial (Docket No. 91, Def. Objections at 8-13). Conviction by trial "does not automatically preclude a defendant from consideration" for a reduction under Guidelines § 3E1.1, Sentencing Guidelines cmt. n.2 (id. at 8-9). Defendant points to areas in which he accepted responsibility or streamlined the trial process that otherwise could have been contested (id. at 9-13). The Government responds that, in order to qualify for this credit, defendant needed to show remorse and acceptance of responsibility before trial (Docket No. 93, Gov't Response at 13), that in rare situations (for example, where a defendant goes to trial to contest and preserve issues other than factual guilt) a defendant who proceeds to trial may obtain that reduction (id. at 13, quoting U.S. Sentencing Guidelines Manual § 3E1.1, cmt. n.2; id. at 16). Despite talking with federal investigators prior to trial, the Government urges that defendant fails later to accept responsibility by compelling a trial of this matter (id. at 14). Defense cooperation with evidentiary issues during the trial does not establish defendant's acceptance of responsibility (id. at 18).

The provision for acceptance of responsibility applies "if the defendant clearly demonstrates acceptance of responsibility for his offense," Sentencing Guidelines § 3E1.1(a) (emphasis added). "In determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to, the following: . . . truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable," id. cmt. n.1(a). Granting this reduction is within this Court's discretion, see United States v. Moore, 968 F.2d

216, 224 (2d Cir. 1992). Defendant proceeded to trial, testified on his own behalf, and denied the allegations against him and put the Government to its burden, even upon the limited issue of his intent, rather than trying this case to preserve a legal issue for appellate review. Defendant's post-conviction letter (PSR ¶ 41; Docket No. 91, Def. Objections at 9; cf. Docket No. 93, Gov't Response at 5-6, 16-17) does not sufficiently state defendant's remorse or acceptance of responsibility for his actions. Acceptance of responsibility shoiuld occur before trial to receive credit, see United States v. Coker, 52 F.3d 1123 (table), 1995 WL 225731, at *1 (D.C. Cir. Apr. 11, 1995) (unpublished) (per curiam) (Docket No. 93, Gov't Response at 15). At bottom, it does not appear that defendant has accepted responsibility to warrant the credit. Defendant's objection on this ground is **denied**.

II.     Sentencing Scheduling

The balance of the sentencing submission schedule is as follows: Sentencing Factors Statement and any further Sentencing Motions due by **June 16, 2008**; Objections and Responses to Sentencing Factors Statement or Motions due by **June 23, 2008**; Presentence Report (amended as indicated above) due to the Court by **June 3 0, 2008**, as are any character letters to be submitted. Sentence shall be held on **Monday, July 7, 2008, at 10 am**, before the undersigned at 414 U.S. Courthouse, 68 Court Street, Buffalo, New York.

CONCLUSION

For the reasons stated above, defendant's objections to the Presentence Investigation Report (Docket No. 91) are noted and are **rejected in part, adopted in part** as outlined above. The Report should indicate that defendant should not receive a two-level enhancement for obstruction due to the alleged instances of perjury, that objection is **adopted**. The remaining

objections are **denied**. The balance of the schedule for sentencing is as discussed above in Part II of this Order.

    So Ordered.

                                                     */s/ Hugh B. Scott*
                                                  Honorable Hugh B. Scott
                                                  United States Magistrate Judge

Dated: Buffalo, New York
       June 2, 2008