UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

**Hon. Hugh B. Scott**

07CR66

(CONSENT)

v.

**Order**

JOHN E. WEISBERG,

Defendant.

Before the Court, on remand, is defendant's sentence following his appeal from the judgment imposing a term of imprisonment of twenty-one months for defendant's conviction on three counts of failure to file federal tax returns. A status conference was held on June 8, 2009 (Docket No. 174 (minutes)), at which time defendant sought an evidentiary hearing to produce mitigating evidence (namely testimony from patients of the defendant and videotape and testimony surrounding the medical condition of defendant's daughter, Kirsten Weisberg ("Kirsten"), and how defendant meets their needs) (see Docket No. 176, Def. Memo. at 1-2). After the Government withdrew its objections (Docket No. 175, Gov't Memo. at 2), that hearing was held on September 21, 22, 24, and 28, 2009 (Docket Nos. 183 (Order rescheduling hearing), 190-93 (minutes), 196-99 (transcripts); see also Docket Nos. 177, 179, 180 (prior Orders setting schedule for hearing)). The parties then were given the opportunity to submit post-hearing materials, as detailed in the Addendum attached to this Order.

Upon submission of defendant's reply (Docket Nos. 211-19), the matter was deemed submitted (Docket No. 220, Order of Feb. 26, 2010). Subsequent to that date, the Government

moved to strike the defense affirmations (Docket No. 221, filed Mar. 9, 2010), arguing that these submissions are outside of the record established during the evidentiary hearing.

To be clear, the purpose of this proceeding is to meet the criteria set forth by then-Chief Judge Arcara in reviewing the previous sentence imposed. There, it was held that "the Magistrate Judge was free to impose any sentence within or outside the advisory Guidelines range as long as he provided an adequate explanation for the chosen sentence and as the sentence chosen is substantially reasonable" (Docket No. 172, Appellate Order at 10 (emphasis added)). The hearing discussed herein considered one factor in sentencing the defendant, whether his sentence should be adjusted in light of its impact on third parties (his daughter and his patients), which entailed extensive testimony. Despite the post-hearing submissions to the contrary, this is not a case deciding the appropriate levels of chiropractic, medical or other care for Kirsten and defendant's patients. It is unfortunate that the private affairs of the innocent bystanders have been brought with extensive detail before this Court for an otherwise discrete sentencing. Nevertheless, this Court has considered all submissions from defense and the Government and applied them in exercising its discretion in imposing the appropriate sentence upon defendant for the offenses of which he is convicted. As this matter proceeds and the details of defendant's situation regarding his family and his professional practice (and the situations of these third parties) are discussed, this standard should be kept in the forefront.

## BACKGROUND

Familiarity with the prior sentencing Orders (Docket Nos. 95, 110, 116), the facts stated therein, and Judge Arcara's appellate Order (Docket No. 172) is presumed. This Court also

reviewed prior sentencing related submissions by the defense and the Government (see Addendum).

Defendant was tried in February 2008 on four counts of failure to file a tax return for the tax years 2000 to 2003, in violation of I.R.C. § 7203, and was convicted on three of the four counts (for tax years 2000, 2001, and 2003); the jury was unable to reach an unanimous for the count regarding tax year 2002. After extensive briefing on sentencing (as noted above), defendant was sentenced to twelve months on two counts (running concurrently with each other) and nine months on the third count, to run consecutive to counts one and two, in order to achieve a sentence within the advisory Guidelines range of 21 to 27 months (see Docket No. 172, Appellate Order at 2-5, summarizing sentencing), see Sentencing Guidelines § 5G1.2(d), and judgment was entered on September 5, 2008 (Docket No. 118). Defendant then appealed his sentence (Docket No. 122). Judge Arcara remanded this case for re-sentencing (Docket No. 172, Appellate Order at 1, 10, 12), staying defendant's sentence while re-sentencing was pending (id. at 12). That stay was extended through the evidentiary hearing (Docket Nos. 177, 179, 183), and the post-hearing briefing period (see Docket No. 193).

*Re-Sentencing Hearing*

*Defense Submission*

An evidentiary hearing was held on September 21, 22, 24, and 28, 2009. Defendant produced a chiropractor, testimony from four of defendant's current patients (one by videotaped deposition), the family physician for Kirsten, and a nurse with Suburban Adult Services, Inc., familiar with Kirsten's care. Chiropractor Dr. Robert Mazurkiewicz narrated a video depicting an example of defendant's chiropractic treatment of Kirsten and her X-rays (Hearing Def. Exs. 1

(DVD of treatment), 2 (text of narration)) and testified that defendant was her sole chiropractic care provider and that defendant had specialized skills required for Kirsten's medical condition. Dr. Mazurkiewicz noted that Kirsten was a risky case, that other chiropractors (including Dr. Mazurkiewicz) may be reluctant to take her case because of her multiple conditions. He opined that Kirsten, due to her irrational fears and her familiarity with her father, would resist changing chiropractors if defendant was not available to continue her treatment (see Hearing Def. Ex. 2).

The video of Kirsten first shows her entering defendant's offices, assisted in walking by her mother. She appeared cheerful and chipper in approaching the office and signing in. Then the video displays five X-rays of Kirsten showing deformities in her spine. The video then shows defendant performing chiropractic techniques on Kirsten, including taking a cast for orthotic footwear[1]. The manipulations shown take about six and a half minutes. The video concludes with her leaving defendant's office following treatment. (Hearing Def. Ex. 1.)

Dr. Mazurkiewicz, in the narration for the video, concludes that

"After examining Kirsten and her medical record last year and observing this video it is my clinical opinion that Kirsten's pre and post surgical success is largely due to the specific chiropractic care provided to her by her father. In cases like this, it is critically important to provide a careful and clinically specific regimen of care. Due to the nature of her condition, she will require ongoing uninterrupted treatment to minimize likely progressive degeneration of her spine. In my professional opinion, her father, Dr. Weisberg, is best qualified to provide her chiropractic and nutritional care because of his familiarity and consistency in her treatment since birth. Because of Kirsten's emotional and contact sensitivities and irrational fears it is difficult to gain a rapport, which would allow for the kinds of adjustments and bodywork that are required to help her. In that sense Dr. Weisberg is irreplaceable as her Doctor of Chiropractic. Any reduction in her

---

[1]The Government introduced into evidence a patient foot casting kit, Hearing Gov't Ex. 43.

standard of care received thus far could have a devastating consequence to her health now and in the immediate future."

(Hearing Def. Exs. 2 (transcribed narration text), 1).

Next, four of defendant's patients testified as to his long-term care of them and what would happen if defendant were not available. Two testified that, if compelled to find a new chiropractor, they would not do so (one terming it that she would become "collateral damage" as a result of this case). Another testified that, while his medical situation would be compromised, he would find another practitioner. The fourth patient, Marjorie Ernst, testified by videotaped deposition, when asked what she would do if defendant was not available to treat her, she said that she did not know what she would do about her pain and thought she may not be around much longer.

Defendant contends that Ms. Ernst (an almost 106-year-old when she testified) is sufficient by herself to justify the relief defendant seeks in his sentence. She testified that she began treatments with defendant in 1993 (at age 90) and has seen him for about the last sixteen years. She had used chiropractors previously and her last one prior to defendant had retired and closed his practice. She stated that she stays with defendant because he provides harder adjustments than other chiropractors. She also noted that other chiropractors would not perform adjustments on older patients like her or apply the adjustments as hard as defendant upon an older patient. She went to have her neck and back treated as well as pain she has in her right hip that radiates down her leg. Her frequency of treatments recently have been once a week for about fifteen to thirty minutes. (Hearing Def. Ex. 13.)

Karen Vance next testified. She is the director of clinical services at Suburban Adult Services, Inc., the agency providing services to Kirsten. Previously, Vance wrote to the Court, on agency letterhead and under her agency title, regarding defendant's sentence (Hearing Def. Ex. 9; Hearing Gov't Ex. 23). But Vance had known defendant and Kirsten personally for over 25 years from Vance's own developmentally disabled child who grew up with Kirsten and resides in the same group home as Kirsten. Vance concludes that Kirsten has been dependent upon defendant for her entire life and that, if he were gone, it would be as if he died to Kirsten. Vance argues that consistency in care is paramount and defendant should be allowed to continue treating Kirsten. This Court finds that Vance is testifying as a family friend and is crediting her testimony accordingly.

Finally, Dr. John Ward, the Weisberg family physician, testified. He reaffirmed the letters he submitted to this Court on defendant's behalf (Hearing Def. Exs. 10, 11; see also Docket No. 98, Def. Atty. Affirm. Ex. C) that Kirsten's well-being would be jeopardized if defendant did not continue her care. Dr. Ward stated that the spinal adjustments, nutrition and other therapies performed by defendant helped Kirsten avoid pain and pain medication.

*The Government's Response*

In response, the Government produced two medical or chiropractic experts, as well as staff at Kirsten's group home. The two doctors reviewed the medical records for Kirsten as well as the testifying patients and Kirsten's group home records. Dr. Benjamin Bartolotto, former chair of the New York State Board of Chiropractic (the licensing and regulatory agency for that profession in this state), testified that defendant's chiropractic care of his daughter was customary

and not unique, that the care he furnished was available from over 250 other chiropractors in Erie County (see Hearing Gov't Ex. 27).

The Government then called witnesses who administered programs at Kirsten's group home and provided her treatment, including testimony from her physical therapist. These witnesses noted the treatment regimes she received, but sometimes the records for Kirsten's care did not note that defendant was providing her chiropractic treatment. They testified that defendant's chiropractic treatment of Kirsten was handled differently from her medical treatment, and was recorded differently[2]. After defendant's conviction and when sentencing initially was pending, witnesses from People, Inc., the agency running Kirsten's home, noted an increase in frequency of defendant's chiropractic treatments (from once every two weeks to weekly or more frequently) of his daughter as well as an increase in home visits to defendant's family residence. Lisa Carr, the People, Inc., day aide who transported Kirsten to and from her chiropractic appointments (and other medical appointments), testified that Kirsten was in the examining room for her chiropractic services for about two minutes and these chiropractic sessions were quick.

After the submission of this issue, the Government moved to strike certain affirmations defendant submitted (Docket No. 221), arguing that defendant should have produced this testimony at the evidentiary hearing and that these affirmations fall outside the time for such factual submissions. The Government also contests some of the factual assertions raised in these defense affirmations (see id. at 4-13).

---

[2]As noted repeatedly, Medicaid did not pay for chiropractic services and the service providers at Kirsten's group home (and her medical treatments) were funded by Medicaid.

*The Government's Motion for Obstruction Sentence*

At the conclusion of the hearing, the Government indicated that it may renew its motion for enhancement of defendant's Guidelines sentence pursuant to Advisory Guidelines § 3C1.1 for defendant's obstruction of justice, adding two points to his offense level (see Docket No. 205, Gov't Post-Hearing Memo.; cf. Docket No. 91, Gov't Response at 3-12; see also Docket No. 123, Presentence Investigation Report (recommending this enhancement); Docket No. 95, Order, at 10-11 (denying enhancement)).  With that enhancement, defendant's adjusted offense level of 16 (see Docket No. 110, Order at 2) would be increased to 18 and, with a criminal history category of I, defendant's sentence (with a current advisory Guidelines range of 21 to 27 months) would become 27-33 months for each count (to be served consecutively).  The Government renews its recommendation that defendant be sentenced to 27-33 months (Docket No. 205, Gov't Memo. at 61).

## DISCUSSION

I.      Discretion in Sentencing

Judge Arcara remanded this case for sentencing because he found procedural errors in the sentence.  In particular, Judge Arcara found that it was error to apply a presumption of reasonableness to the Guidelines range (Docket No. 172, Appellate Order at 8-10) and in denying a sentence outside of the advisory Guideline range before defendant appeared for sentencing (id. at 11).  Judge Arcara held that it was error to presume that a within Guidelines sentence is to apply absent extraordinary circumstances (id. at 7-8; see Gall v. United States, 552 U.S. 38, 47 (2007)).  He held that the Court need not have to articulate a specific policy disagreement with the Guidelines in order to impose a sentence outside of the Guideline range (id. at 10).  The

Court need only state "an adequate explanation" for imposing the sentence chosen (id.).  The

Guidelines range is not to be deemed presumptively reasonable (id. at 8-9, citing Nelson v.

United States, 555 U.S. ___, 129 S. Ct. 890, 892 (2009) (per curiam)[3]).

Essentially, the error found was that this Court did not exercise its full discretion in

imposing sentence and it seemed too overly reliant upon the sentencing scheme under the

Sentencing Reform Act and the Sentencing Guidelines found advisory by United States v.

Booker, 543 U.S. 220 (2005), and its progeny[4].  The Court is to consider the factors under the

Sentencing Reform Act, 18 U.S.C. § 3553(a) (discussed below), and the Sentencing Guidelines

and the advisory sentencing range, but it is not bound by the Guidelines or that range.  As stated

above, Judge Arcara held that "the Magistrate Judge was free to impose any sentence within or

outside the advisory Guidelines range as long as he provided an adequate explanation for the

chosen sentence and as the sentence chosen is substantially reasonable" (id. at 10).

 Judge Arcara noted that defendant did not object to the Sentencing Guidelines range here

of 21 to 27 months, but only appealed from the sentence that applied that Guideline range (id. at

2, 6).  Defendant has sought either a downward departure from the Guideline range or imposition

of a non-Guideline sentence (see Docket No. 98).  In light of this understanding of sentencing

discretion, this Court considers the factors in entering the appropriate sentence here.

---

[3]This case was decided January 26, 2009, after the initial sentence was imposed in this case.

[4]Kimbrough v. United States, 552 U.S. 85 (2007); Gall, supra, 552 U.S. 38 (2007); Rita v. United States, 551 U.S. 338 (2007); see also Nelson, supra, 555 U.S. at ___, 129 S.Ct. at 892 (reaffirming advisory nature of Guidelines, holding that Guidelines are not to be presumed reasonable by the sentencing court).

II.     Factors under 18 U.S.C. § 3553(a)

The Sentencing Reform Act sets forth factors that must be considered in imposing a sentence. These include the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentenced imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, 18 U.S.C. § 3553(a)(1), (2), as well as the kinds of sentences and sentencing ranges available and policy statements from the Sentencing Commission, id. § 3553(a)(3), (4), (5), and avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, id. § 3553(a)(6), and providing restitution to victims, id. § 3553(a)(7). Under the Sentencing Reform Act, the Court considers the Guidelines and the range it suggests, see Gall, supra, 552 U.S. at 50 n.6, and then will determine (in exercising its discretion) whether or not to apply that advisory range. Thus, the Guidelines are the starting point and should inform the Court of each step in the sentencing process, see Gall, supra, 552 U.S. at 46; Kimbrough, supra, 552 U.S. at 108-09, but (as was found by Judge Arcara (see generally Docket No. 172, Appellate Order)), these Guidelines are not the end of the process in determining the appropriate sentence.

Defendant initially suggested alternatives to incarceration, such as community service or service in a halfway house and urged a non-imprisonment sentence (Docket No. 100, Def. Memo. at 28). Defendant argued the harshness of his incarceration and how it "would adversely affect Kirsten Weisberg, the patients of the Aurora Wellness Center or its employees" (id.). The

Government responded that a non-Guidelines sentence, including one without incarceration, would undermine deterrence (Docket No. 106, Gov't Response at 23-25, citing United States v. Cutler, 520 F.3d 136, 163 (2d Cir. 2008)). The Government concluded that

> "to show leniency to this defendant after eight years of willfully failing to file tax returns, after engaging in the kind of evasion and tax obstruction he engaged in, and after he forced the Government to expend substantial resources in order to compel his compliance with what the law required, will only invite other tax scofflaws, if not honest people, to evade their tax obligations"

(id. at 24-25).

Following the re-sentencing hearing, the Government urges a sentence of 27-33 months while defendant seeks a sentence (either departing from the Guidelines or imposing a sentencing variance) that avoids defendant being incarcerated in prison but instead have placement in a halfway house (see Docket No. 219, Def. Memo. at 33) for an unspecified term. Both parties seem to use the Guidelines as the basis for the sentence (either imposing a sentence pursuant to them or to depart or vary from them) without recognizing (as had Judge Arcara) the Court's discretion to impose any rational sentence after considering what the appropriate sentencing range would be under the (now advisory) Guidelines regime.

A.      Government's Factors and Enhanced Sentence

The Court first considers the Government's motion for an enhanced sentence under the advisory Guidelines, since deciding defendant's ultimate sentence requires the Court to first consider what the sentencing range would be under the advisory Guidelines regime, see Gall, supra, 552 U.S. at 46; Kimbrough, supra, 552 U.S. at 108-09.

In addition to stressing the seriousness of defendant's offense and other factors to be considered in sentencing, the Government also has renewed (cf. Docket No. 93, Gov't Memo. in

Response to Defense Objections to Presentence Report ("PSR") at 3-12; Docket No. 95, Order at 10-11; Docket No. 123, Presentence Investigation Report) its motion seeking an enhancement of the sentence for obstruction of justice (on new grounds, for alleged perjury committed during the re-sentencing hearing) under advisory Guidelines § 3C1.1 (Docket No. 205, Gov't Post-Hearing Memo. at 31-37). The Government argues that defendant mislead the Court as to the frequency of the chiropractic treatments he administered to Kirsten since his conviction (id. at 31, 34-37), concluding that his Guidelines sentence should be enhanced for this obstruction. Alternatively, the Government argues that the sentence should be at the higher end of the advisory Guidelines range (27 months) based on defendant furnishing incomplete or misleading information, Sentencing Guidelines § 3C1.1, appl. note 5(c) (id. at 33).

Defendant refutes this and argues for a non-incarceration sentence by posing one of three questions, whether the Court was misled as to the frequency of his chiropractic treatments of Kirsten (a recast of the Government's issue) (Docket No. 219, Def. Memo. at 1). Defendant then outlines the frequency of treatments he performed on Kirsten (id. at 2-4), including affirmations from his wife (and Kirsten's mother), Daryl (Docket No. 216), and Dr. Stephan (Docket No. 217) to refute the Government's contention that defendant overstated the frequency of these treatments (Docket No. 219, Def. Memo. at 4-5).

Initially, defendant faced an advisory Guidelines sentencing range of 21 to 27 months (Docket No. 110, Order at 11-12; see Docket Nos. 95, 123), then was sentenced to 21 months (see Docket No. 125, Amended Judgment). Under the advisory Guidelines scheme, if an enhancement for obstruction of justice is added to the offense level and given defendant's criminal history, his sentence would be 27 to 34 months, a 13-month increase from the sentence

initially imposed.  But, as Judge Arcara noted, the Guidelines scheme is <u>advisory</u>; this Court is

not bound to impose the Guidelines sentence even if it were enhanced for defendant's alleged

obstruction of justice.

The Guideline regarding obstruction or impeding the administration of justice provides

that

> "If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or
> impede, the administration of justice with respect to the investigation,
> prosecution, or <u>sentencing</u> of the instant offense of conviction, and (B) the
> obstructive conduct related to (i) the defendant's offense of conviction and any
> relevant conduct; or (ii) a closely related offense, increase the offense level by two
> levels."

Guidelines § 3C1.1.  The commentary for this section notes as examples of covered conduct

suborning or attempting to suborn perjury, <u>id.</u> Commentary 4.

The Supreme Court has noted that "not every accused who testifies at trial and is

convicted will incur an enhanced sentence under § 3C1.1 for committing perjury.  As we have

just observed, an accused may give inaccurate testimony due to confusion, mistake or faulty

memory . . . . Her testimony may be truthful, but the jury may nonetheless find the testimony

insufficient to excuse criminal liability or prove lack of intent," <u>United States v. Dunnigan</u>,

507 U.S. 87, 95 (1993).  This Court needs to review the evidence of alleged perjury and "make

independent findings necessary to establish a willful impediment to or obstruction of justice, or

an attempt to do the same, under the perjury definition" set out by the Supreme Court, <u>id.</u>  (<u>see</u>

Docket No. 91, Def. Objections at 3-4.)  Even if the proffered statements are seen to be

perjurious, the Government fails to show that defendant willfully obstructed justice in making the

statements, <u>see</u> <u>United States v. Canova</u>, 412 F.3d 331, 357 (2d Cir. 2005).

Here, the objectionable statement is the frequency of defendant's chiropractic treatment of his daughter. Although defendant has forestalled his sentence by over a year (from the September 2008 initial judgment through his appeal of that sentence to the present), defendant has exercised his constitutional right to appeal from that sentence and challenge its basis. This Court has reviewed the alleged perjurious statements and finds that no perjury has occurred to warrant an enhancement to the Guidelines sentence range. Whether defendant treated his daughter weekly or more frequently or misstated that frequency is not material to the underlying issue–the appropriate sentence for his crimes. Thus, the Government's renewed motion (Docket No. 205) for enhancing his Guidelines sentencing range is **denied**. As a result, the Guideline range that is the starting point for sentencing here is 21 to 27 months, as was previously found.

Next, the Court considers defense arguments for a non-prison sentence based upon defendant's practice and family obligations as well as other grounds he previously asserted.

B.      Factors Raised by Defense Considered

Defendant has raised several different factors to warrant a sentence below the advisory Guideline range. He ultimately seeks a sentence of probation, that would facilitate his continued care for his daughter and continuation of his chiropractic practice. The testimony at the hearing dealt with the care needed by defendant's daughter Kirsten and the chiropractic care rendered to defendant's patients, with testimony (live and videotaped) from five of his patients. Defendant here has invoked his ailing daughter and her asserted care needs as a shield from punishment.

Defendant poses his next two questions in support of imposition of a non-Guidelines sentence. He asks whether Dr. Lifeso's testimony is sufficiently credible to support the conclusion that defendant's continued chiropractic care was not required by Kirsten or

14

defendant's patients (including 106-year-old Marjorie Ernst); and whether the remainder of the Government's testimony is sufficient to support the conclusion that defendant's chiropractic services are unnecessary (Docket No. 219, Def. Memo. at 1).

        1.        Defendant's Family Circumstances

Defendant argues that his disabled daughter Kirsten needs his constant professional services and care regardless of defendant's incarceration. As previously noted (Docket No. 110, Order at 9; Docket No. 116, Order at 9), at the outset Kirsten's situation in light of defendant's conviction appeared to be tragic.

Under the advisory Guidelines, family ties and responsibilities such as presented by defendant for his daughter were not relevant in determining whether to impose a sentence below the Guidelines range, Sentencing Guidelines § 5H1.6 (Docket No. 110, Order at 8; see Docket No. 106, Gov't Response at 5-6). "Because the Guidelines disfavor departure based upon family responsibilities, such a departure is not permitted except in extraordinary circumstances," United States v. Smith, 331 F.3d 292, 294 (2d Cir. 2003), quoted favorably in Cutler, supra, 520 F.3d at 164. In pre-Booker decisions, the Second Circuit had upheld extraordinary family circumstances where the defendant was the sole provider or sole caregiver to a needy family member or members, see Cutler, supra, 520 F.3d at 164 (citing cases finding such extraordinary circumstances, United States v. Galante, 111 F.3d 1029, 1035 (2d Cir. 1997); United States v. Johnson, 964 F.2d 124, 129-30 (2d Cir. 1992); and United States v. Alba, 933 F.2d 1117, 1122 (2d Cir. 1991)).

These cases, although citing the advisory Guidelines, did not consider the advisory nature of the Guidelines in the post-Booker world and the discretion held by the sentencing court in

imposing a sentence and considering (among other factors) the impact of the sentence on the defendant's dependents. For example, in Cutler, while discussing extensively Booker and its progeny on the appellate review standard for sentencing, 520 F.3d at 154-58, the Second Circuit started from the Guidelines scheme and held that the bases for the district court's departures from that scheme (including for the impact upon relatives of the defendant) were not supported by the evidence, id. at 158-67 (sentence for Cutler), 167-75 (sentence for codefendant Freedman). The court did not take the next step of determining whether the trial court gave an adequate, non-Guidelines explanation for the sentence imposed or noting the trial court's discretion to consider the impact of the sentence upon third parties in imposing sentence. It was the sentences of both lead defendant Cutler, id. at 164-66, and of codefendant Freedman, id. at 171-72, that discussed the role of family responsibilities should have in sentencing, with Freedman's family situation very similar to defendant's care obligations to his family. The Second Circuit in Cutler did not consider whether the district court abused its discretion in considering those family situations in imposing sentence.

The remand in this case calls upon this Court to exercise its full discretion, starting from the Guidelines and what the range of an advisory Guidelines sentence would be, to then impose a sentence the Court can adequately explain. The particular inquiry here is whether the claimed care obligations of the defendant for his daughter justifies a sentence outside the Guidelines range (to allow him to continue furnishing this care outside of prison) in the exercise of the Court's sentencing discretion. From the evidence adduced at the hearing and review of the entire record herein (see Addendum attached infra), this Court finds that defendant **is not indispensable** to Kirsten's care as to warrant the sentence sought. Substitute chiropractic care

has been provided to Kirsten without apparent complaint or incident and similar substitute care was provided to some of the patient witnesses, with varying degrees of success. The only expressed concern was that, due to her mental retardation, Kirsten may not accept a new practitioner or she may resist or act negatively toward change, and that testimony was the speculation of the chiropractor-narrator of defendant's video of Kirsten's treatment and her mother's post-hearing affirmation (cf. Docket No. 216, Daryl Weisberg Affirm. ¶¶ 11-15), while witnesses from Kirsten's group home and the service agencies testified that Kirsten has adjusted well to other changes in her life.

Defendant now argues that the issue is defendant's <u>chiropractic</u> care for Kirsten would suffer if defendant is incarcerated and not her financial well-being.[5]

The parties argue extensively and strenuously on the credence the Court should give to Dr. Robert Lifeso's testimony (in particular) and the Government's medical testimony in general (<u>see generally</u> Docket No. 219, Def. Reply Memo.), in an attempt to convert this sentencing proceeding into a mini-trial as to either the merits of chiropractic care or a determination of the optimal care for Kirsten and defendant's patients. But the issue here is determining the appropriate sentence to be imposed upon defendant, considering (as one factor) the defendant's chiropractic practice and family obligations in setting that sentence.

Witnesses testified that Kirsten is a happy, well-adjusted adult despite her condition and had moved without incident from her family home into the group home. Kirsten has had a

---

[5]This is despite earlier arguments that discussed other aspects of her well-being (including financial) if defendant was incarcerated, <u>cf.</u> Docket No. 110, Order at 7-8, citing Docket No. 98, Ex. B, Daryl Weisberg's letter of Apr. 26, 2008, to Chambers; Docket No. 100, Def. Memo. at 10-11.

number of physicians and physical therapists without testimony of any upset as these professionals changed over time. Daryl Weisberg's post-hearing statement, that Kirsten would react negatively from the loss of her father arises from his incarceration <u>in general</u> (<u>cf.</u> Docket No. 216, Daryl Weisberg Affirm. ¶¶ 11-14) rather than being deprived of his chiropractic and nutritional skills, is revealing. This shows that whatever loss Kirsten may suffer as a result of defendant's incarceration arises from the <u>loss of a parent</u> and not from loss of a medical professional. Even if the Government's medical expert is not credited (as argued by defendant, <u>see</u>, <u>e.g.</u>, Docket No. 219, Def. Memo.),the brief period when defendant would not be rendering chiropractic care to her during his incarceration, with substitute or alternative practitioner providing the service, will not be debilitating to Kirsten. While it may be preferable for her to have her father continue to perform chiropractic services on Kirsten, it is not <u>essential</u> that he do so to the point of reducing his sentence to accommodate his provision of that service.

        2.      Defendant's Practice and Its Employees

        a.      Facts

Next, defendant contended that his 400 patients and 3 employees of his practice needed him. At oral argument for the initial sentencing, he noted that he was the only pediatric chiropractor in this area and one of a few nutritionist chiropractors in this region, while the Government replied that the patients have other chiropractors they could turn to if defendant is incarcerated (Docket No. 106, Gov't Response at 12-13, Ex. A (telephone directory listing of chiropractors in Buffalo area)). The Government argued that defendant's professional services are not sufficiently extraordinary to take the case out of the "heartland" for the appropriate sentencing range (<u>id.</u> at 11).

During the evidentiary hearing, defendant produced four of his patients (all adults) who each testified to the nature of his treatment of them, the duration of their care, and the need for continuation of care provided by defendant (see Docket No. 185, Def. Witness List at 1, 2; Hearing Def. Ex. 13). They testified as to their respective needs for his skills as a chiropractor and nutritionist. The Government produced Dr. Robert Lifeso and Dr. Benjamin Bartolotto who testified about the availability of other chiropractors in Western New York and (Dr. Lifeso) the necessity of chiropractic treatment for these patients (Docket No. 186, Gov't Witness List at 8-9, 7). The Government also offered as evidence licensing statistics for chiropractors in New York State, and Yellow Page advertisements of chiropractors in the area of defendant's practice (Docket No. 187, Gov't Ex. List, Exs. 27, 28-A to 28-E; Hearing Gov't Ex. 27). These experts found that defendant's treatment of the four witness patients was unremarkable and in some instances even unnecessary.

In his post-hearing papers, and as stated with Kirsten, defendant disputes the premises Dr. Lifeso uses to reach his opinions on the efficacy of chiropractic care generally (see Docket No. 219, Def. Memo. at 7-19; Docket No. 211, Def. Atty. Affirm.; Docket Nos. 212-15, Exs. to Def. Atty. Affirm.), and notes that Dr. Bartolotto found that defendant's testifying patients (and Kirsten) each received appropriate chiropractic care from defendant (Docket No. 219, Def. Memo. at 19).

b.     Legal Analysis

Like family circumstances discussed above as regarding Kirsten, Sentencing Guidelines § 5H1.6, the Guidelines do not recognize a defendant's employment-related contributions as grounds for departure from the Guideline range (see Docket No. 110, Order at 9), Sentencing

Guidelines §§ 5H1.2 (education and vocational skills), 5H1.5 (employment record), 5H1.11 (employment-related contributions, civic or charitable service).

The issue here is whether the dependence of defendant's patients should warrant a reduced (from an advisory Guidelines range sentence) or non-incarcerative sentence. The evidence produced here indicates that chiropractic treatment, if necessary for these patient witnesses, could be provided by other practitioners but these patients insist upon defendant to be their chiropractor. As stated regarding Kirsten, while these patients each may <u>prefer</u> to have defendant as their chiropractor, it is <u>not essential</u> for defendant to furnish those services so as to require a lesser sentence. While defendant strenuously challenges the opinions of Drs. Lifeso and Bartolotto, there is no dispute that other chiropractors are available in this region that could serve these patients and (save possibly Ms. Ernst), their care needs are not so unique as to preclude professionals other than defendant from serving them. There was no testimony that defendant's services to them were so unique as to preclude his prolonged incarceration. As with Ms. Ernst, there is an open question whether such treatment is even necessary, with Dr. Bartolotto testifying that chiropractic care may be counter indicative for her a patient of her age.

Thus, defendant's professional and family responsibilities **do not justify** imposing a more lenient sentence.

### 3. Other Defense Factors

Previously, defendant invited the Court to consider his charitable and civic works as a factor (Docket No. 100, Def. Memo. at 19-22) and the overall egregiousness (or lack thereof) of the offense of conviction (<u>id.</u> at 26; <u>see</u> Docket No. 203, Def. Post-Hearing Memo. at 1) in sentencing him. The Government countered relying upon the advisory Guidelines and their de-

emphasis of the civil, charitable, public service or other good works of the defendant in departing or reducing the Guidelines range (Docket No. 106, Gov't Response at 13, 14), Sentencing Guidelines § 5H1.11.  The Government also argued the seriousness of these offenses based upon defendant's conduct (both charged and uncharged) for a ten-year period (by ignoring warnings and admonitions to file his tax returns, engaging in tax evasive activities, purporting to change his legal residence, sending funds to offshore accounts, and following the lead of American Rights Litigators and their strategy of evasion and pestering the IRS with queries about the legality of taxation) warrants the high end of the Guidelines range of 27 months (Docket No. 101, Gov't Sentencing Memo. at 1; Docket No. 106, Gov't Response at 17-23; <u>see also</u> Docket No. 205, Gov't Post-Hearing Memo. at 38-41).

Given the remand of sentencing and the mandate to have an adequate explanation for the sentence to be imposed that is substantially reasonable (<u>cf.</u> Docket No. 174, Appellate Order at 10), this Court considers the factors previously presented by defendant although not discussed during the evidentiary hearing and the Government's renewed arguments regarding sentencing as well as factors for enhancing his sentence for obstruction.  Applying its discretion, the Court **does not consider** defendant's civic accomplishments a sufficient ground to affect his sentence.

C.      Government's Motion to Strike Affirmations

At the end of this argument, the Government moves to strike defense affirmations and associated exhibits (Docket No. 221).  Again, this sentencing process is within the Court's discretion.  To avoid any argument that the Court abused its discretion in not considering any material provided by the parties (even material that could have been produced at the hearing), the Government's motion to strike is **denied**.

III.    Result

As the Government noted for the initial calculation of the advisory Guidelines, defendant's objection to the sentencing range stems from the inclusion of relevant conduct and consecutive sentence under the advisory Guidelines § 5G1.2(d) (see generally Docket No. 95, Order) leading to the recommended range of 21 to 27 months; but even if the sentence focused solely on the three counts of conviction, the range would be 15 to 21 months (Docket No. 106, Gov't Response at 17).  The sentence to be imposed should also reflect the seriousness of the offense, given the tax liability had defendant filed.  The duration of the sentence provides deterrence to others contemplating following defendant in his ill-advised challenge to the federal taxation system.

At the end of this process, this Court finds that defendant's circumstances as stated in his papers and in the hearing **are not sufficiently compelling** to impose a non-Guidelines sentence to have defendant avoid incarceration by allowing him to continue his practice (and treat his daughter) while serving his sentence.  The Court declines to exercise its discretion in this direction.  The "collateral damage" of this sentence upon otherwise innocent bystanders here has been considered and alternatives exist for those third parties (if they choose to use them) to mitigate the harm that arises, in the first instance, from defendant's criminal acts and conviction therefor.

\* \* \* \*

This proceeding has reinforced the correctness of the Sentencing Commission in concluding that considerations of the family and business situations of a defendants, **such as raised above**, are irrelevant and ought not to be considered (save in the extreme instance) in

22

determining the appropriate sentence under the Sentencing Reform Act. Courts are to impose sentences that address the offense of conviction (including its seriousness, protection of the public, and deterrence concerns), recognize the criminal history of the defendant, and the rehabilitative and retribution aspects of any sentence, see 18 U.S.C. § 3553(a) (see also Docket No. 116, Order at 7). Anything else beyond these factors is tangential. The evidentiary hearing here (and the post-hearing submissions) have gone far afield from the issue of defendant's crime and his prior criminal history and what would be the just sentence for that offense.

## CONCLUSION

Defendant's motion for a downward departure under the advisory Sentencing Guidelines (see Docket No. 176) is **denied**, his motion for a non-Guidelines sentence (see id.) is **denied** on the grounds argued by defendant. The Government's motion (Docket No. 205) for an enhancement on defendant's Guidelines sentence for his obstruction of justice also is **denied**, as is its motion (Docket No. 221) to strike defense post-hearing affirmations and exhibits.

Defendant's sentencing, consistent with this Opinion, shall be held on **Tuesday, March 30, 2010, at 2 pm**, before the undersigned. Given the volume of materials submitted to date that has been (and will be considered) in re-sentencing defendant, additional written submissions will be unnecessary.

So Ordered.

_/s/ Hugh B. Scott_
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
March 12, 2010

23

Addendum–list of filings on re-sentencing