UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

**Hon. Hugh B. Scott**

v.                                                                          07CR66

(CONSENT)

JOHN E. WEISBERG,                                              **Order**

Defendant.

Before the Court is defendant's sentencing[1] following his appeal from the judgment

initially imposing a sentence of a term of imprisonment of a total of twenty-one months for

defendant's conviction on three counts of failure to file federal tax returns (Docket No. 125,

Amended Judgment; <u>see</u> Docket No. 172, Judge Arcara Order on appeal; Docket No. 118,

original Judgment).  Defendant was resentenced on September 21, 2010 (<u>see</u> Docket No. 233,

Amended Judgment), and this is the written decision on that sentencing.  As noted during the

sentencing by both parties, this has been the most intensely litigated misdemeanor sentencing in

this District.  Familiarity with the prior sentencing Orders (Docket Nos. 95, 110, 116, 222) and

Judge Arcara's appellate Order (Docket No. 172) is presumed.  Finally, as noted during the

sentencing proceeding, this Court has reviewed <u>all</u> documents produced relative to this sentence

(much of which is cited herein).

---

[1]A previous Order, Docket No. 222, considered many of these sentencing issues, but prior
to allocution; this Order was later vacated to allow for allocution, Docket No. 224.

**BACKGROUND**

Defendant was convicted, following trial in February 2008, on three of four counts of failure to file a tax return, in violation of I.R.C. § 7203 (for tax years 2000, 2001, and 2003); the jury was unable to reach an unanimous verdict for the failure to file count for tax year 2002.

*Initial Sentencing*

Following submission of the initial Presentence Report (hereinafter "PSR") (see Docket No. 123) to the parties, defendant filed his objection (Docket No. 91; see Docket No. 92, defense attorney's affirmation with exhibits); Docket No. 93, Gov't Memo. with exhibits). The Court rejected in part defendant's objection, rejected the Government's motion for enhancement due to obstruction of justice during the course of the trial and adopted in part the PSR (Docket No. 95). Defendant next submitted his statement regarding sentencing factors (Docket No. 97) and moved either for a downward departure or for imposition of a non-Guideline sentence (Docket No. 98; see id. (attached exhibits); Docket No. 99, Def. Atty. Affirm.; Docket No. 100, Def. Memo), which the Government opposed (Docket Nos. 103, 104-06; see also Docket No. 101, Gov't Statement Regarding Sentencing Factors, which sought a sentence at the high end of the Guideline range). Defendant's motion for downward departure or for a non-Guideline sentence was denied (Docket No. 110). Defendant then moved for reconsideration (Docket No. 111; see Docket No. 112, Def. Memo., No. 115, Def. Reply; cf. Docket No. 114, Gov't Response), which was also denied (Docket No. 116).

After this extensive briefing on sentencing, defendant was sentenced, on August 27, 2008, to twelve months on two counts (running concurrently with each other) and nine months on the third count, to run consecutive to counts one and two, in order to achieve a sentence

within the advisory Guidelines range of 21 to 27 months (see Docket No. 172, Appellate Order at 2-5, summarizing sentencing), see Sentencing Guidelines § 5G1.2(d), and judgment was entered on September 5, 2008 (Docket No. 118; see also Docket No. 125, Am. Judgment).

*Appeal of Sentence and Remand*

Defendant appealed this judgment as for the sentence (Docket No. 122). Judge Arcara remanded this case for re-sentencing (Docket No. 172, Appellate Order at 1, 10, 12), staying defendant's sentence while re-sentencing was pending (id. at 12). That stay was extended through the evidentiary hearing (Docket Nos. 177, 179, 183), and the post-hearing briefing period (see Docket No. 193) and until September 21, 2010, when he was sentenced. A status conference was held on June 8, 2009 (Docket No. 174 (minutes)), at which time defendant sought an evidentiary hearing to produce mitigating evidence (namely testimony from patients of the defendant and videotape and testimony surrounding the medical condition of defendant's daughter, Kirsten Weisberg ("Kirsten"), and how defendant meets their needs) (see Docket No. 176, Def. Memo. at 1-2). After the Government withdrew its objections (Docket No. 175, Gov't Memo. at 2), that hearing was held on September 21, 22, 24, and 28, 2009 (Docket Nos. 183 (Order rescheduling hearing), 190-93 (minutes), 196-99 (transcripts)). The parties then were given the opportunity to submit post-hearing materials, as described below.

Since the remand of defendant's sentence, the following submissions were made to this Court by the defendant: Memorandum of Law, Docket No. 176; Exhibit List, Docket No. 184; Witness List, Docket No. 185; Post-Hearing Memorandum of Law, Docket No. 203; defense counsel's Affirmation, Docket No. 211, with exhibits, Docket Nos. 212-15; Affirmation of Daryl Weisberg, defendant's wife, with exhibit, Docket No. 216; Affirmation of Dr. William H.

Stephan, with exhibits, Docket No. 217 (discussing Government Ex. 24 from the hearing, Ex. A, and ¶ 119 of the Government's Post-Hearing Memorandum proposed findings of fact, Docket No. 205, at 29); and further Memorandum of Law, Docket Nos. 218, 219.

The Government then submitted the following opposition documents or motion for enhanced Guidelines sentence: Memorandum concerning remand sentencing proceeding, Docket No. 175; Witness List, Docket Nos. 186, 188; Exhibit List, Docket No. 187; Sentencing Memorandum, Docket No. 205; Sentencing Memorandum (wherein Government seeks enhanced sentence), Docket No. 209; and a Motion to Strike certain post-hearing defense affirmations and exhibits, (Docket No. 221).

*Evidentiary Hearing*

At the evidentiary hearing, defendant produced a chiropractor, testimony from four of defendant's current patients (one by videotaped deposition), the family physician for Kirsten, and a nurse with Suburban Adult Services, Inc., familiar with Kirsten's care. Chiropractor Dr. Robert Mazurkiewicz narrated a video depicting an example of defendant's chiropractic treatment of Kirsten and her X-rays (Hearing Def. Exs. 1 (DVD of treatment), 2 (text of narration)) and testified (see Docket Nos. 196, Tr. Tr. of Sept. 21, 2009, at 13-101) that defendant was her sole chiropractic care provider and that defendant had specialized skills required for Kirsten's medical condition. Dr. Mazurkiewicz noted that Kirsten was a risky case, that other chiropractors (including Dr. Mazurkiewicz himself) may be reluctant to take her case because of her multiple conditions. He opined that Kirsten, due to her irrational fears and her familiarity with her father, would resist changing chiropractors if defendant was not available to continue her treatment (see Hearing Def. Ex. 2).

The video of Kirsten first shows her entering defendant's offices, assisted in walking by her mother. She appeared cheerful and chipper in approaching the office and signing in. Then the video displays five X-rays of Kirsten showing deformities in her spine. The video then shows defendant performing chiropractic techniques on Kirsten, including taking a cast for orthotic footwear[2]. The video revealed that the manipulations shown took about six and a half minutes. The video concludes with her leaving defendant's office following treatment. (Hearing Def. Ex. 1.)

Dr. Mazurkiewicz, in the narration for the video, concludes that

"After examining Kirsten and her medical record last year and observing this video it is my clinical opinion that Kirsten's pre and post surgical success is largely due to the specific chiropractic care provided to her by her father. In cases like this, it is critically important to provide a careful and clinically specific regimen of care. Due to the nature of her condition, she will require ongoing uninterrupted treatment to minimize likely progressive degeneration of her spine. In my professional opinion, her father, Dr. Weisberg, is best qualified to provide her chiropractic and nutritional care because of his familiarity and consistency in her treatment since birth. Because of Kirsten's emotional and contact sensitivities and irrational fears it is difficult to gain a rapport, which would allow for the kinds of adjustments and bodywork that are required to help her. In that sense Dr. Weisberg is irreplaceable as her Doctor of Chiropractic. Any reduction in her standard of care received thus far could have a devastating consequence to her health now and in the immediate future."

(Hearing Def. Exs. 2 (transcribed narration text), 1).

Next, four of defendant's patients testified as to his long-term care of them and what would happen if defendant were not available. Two testified that, if compelled to find a new chiropractor, they would not do so (one terming it that she would become "collateral damage" as a result of this case) (Docket No. 196, Tr. at 123, 122-23 (Valerie Davis), 106-07 (Richard

_____

[2]The Government introduced into evidence a patient foot casting kit, Hearing Gov't Ex. 43.

Olday)). Another testified that, while his medical situation would be compromised, he would find another practitioner (id. at 137 (Dennis Collins)). The fourth patient, Marjorie Ernst, testified by videotaped deposition, when asked what she would do if defendant was not available to treat her, she said that she did not know what she would do about her pain and thought she may not be around much longer (Hearing Def. Ex. 13; see Docket No. 193).

Defendant contends that Ms. Ernst's testimony (an almost 106-year-old when she was deposed earlier in 2009) is sufficient by itself to justify the relief defendant seeks in his sentence. She testified that she began treatments with defendant in 1993 (at age 90) and has seen him for about the last sixteen years. She had used chiropractors previously and her last one prior to defendant had retired and closed his practice. She stated that she stays with defendant because he provides harder adjustments than other chiropractors. She also noted that other chiropractors would not perform adjustments on older patients like her or apply the adjustments as hard as defendant upon an older patient. She went to have her neck and back treated as well as pain she has in her right hip that radiates down her leg. Her frequency of treatments recently have been once a week for about fifteen to thirty minutes. (Hearing Def. Ex. 13.)

Karen Vance next testified (see Docket No. 196, Tr. at 146-82). She is the director of clinical services at Suburban Adult Services, Inc., the agency providing services to Kirsten. Previously, Vance wrote to the Court, on agency letterhead and under her agency title, regarding defendant's sentence (Hearing Def. Ex. 9; Hearing Gov't Ex. 23). But Vance had known defendant and Kirsten personally for over 25 years from Vance's own developmentally disabled child who grew up with Kirsten and resides in the same group home as Kirsten. Vance concludes that Kirsten has been dependent upon defendant for her entire life and that, if he were

gone, it would be as if he died to Kirsten. Vance argues that consistency in care is paramount and defendant should be allowed to continue treating Kirsten. This Court finds that Vance is testifying as a family friend (and less as a representative of an otherwise disinterested agency) and is crediting her testimony accordingly.

Finally, Dr. John Ward, the Weisberg family physician, testified (see Docket No. 196, Tr. at 182-217). He reaffirmed the letters he submitted to this Court on defendant's behalf (Hearing Def. Exs. 10, 11; see also Docket No. 98, Def. Atty. Affirm. Ex. C) that Kirsten's well-being would be jeopardized if defendant did not continue her care. Dr. Ward stated that the spinal adjustments, nutrition and other therapies performed by defendant helped Kirsten avoid pain and pain medication.

*The Government's Proof at Hearing*

In response, the Government produced two medical or chiropractic experts, as well as staff at Kirsten's group home (see Docket Nos. 197, 198, 199). The two doctors reviewed the medical records for Kirsten as well as the testifying patients and Kirsten's group home records. Dr. Benjamin Bartolotto, former chair of the New York State Board of Chiropractic (the licensing and regulatory agency for that profession in this state), testified that defendant's chiropractic care of his daughter was customary and not unique, that the care he furnished was available from over 270 other chiropractors in Erie County (Docket No. 197, Tr. of Sept. 22, 2009, at 233, 243; see Hearing Gov't Ex. 27).

The Government then called witnesses who administered programs at Kirsten's group home and provided her treatment, including testimony from her physical therapist (Docket Nos. 197-99). These witnesses noted the treatment regimes she received, but sometimes the records

for Kirsten's care did not note that defendant was providing her chiropractic treatment. They testified that defendant's chiropractic treatment of Kirsten was handled differently from her medical treatment, and was recorded differently[3] (Docket No. 197, Tr. at 412, 452, 469 (Raelene Windom); Docket No. 198, Tr. of Sept. 24, 2009, at 506-07, 524-25 (Lisa Carr)). After defendant's conviction and when sentencing initially was pending, witnesses from People, Inc., the agency running Kirsten's home, noted an increase in frequency of defendant's chiropractic treatments (from once every two weeks to weekly or more frequently) of his daughter as well as an increase in home visits to defendant's family residence (Docket No. 197, Tr. at 411-12, 413-15 (Windom); Docket No. 198, Tr. at 501, 503, 514-15, 525-26 (Carr)). Lisa Carr, the People, Inc., day aide who transported Kirsten to and from her chiropractic appointments (and other medical appointments), testified that Kirsten was in the examining room for her chiropractic services for about two minutes and these chiropractic sessions were quick (Docket No. 198, Tr. at 497-98, 515).

After the submission of this issue, the Government moved to strike certain affirmations defendant submitted (Docket No. 221), arguing that defendant should have produced this testimony at the evidentiary hearing and that these affirmations fell outside the time for such factual submissions. The Government also contests some of the factual assertions raised in these defense affirmations (see id. at 4-13).

---

[3]As noted repeatedly, Medicaid did not pay for chiropractic services and the service providers at Kirsten's group home and her medical treatments were funded by Medicaid, e.g., Docket No. 197, Tr. at 469 (Windom).

*The Government's Motion for Obstruction Sentence*

At the conclusion of the hearing, the Government indicated that it may renew its motion for enhancement of defendant's Guidelines sentence pursuant to Advisory Guidelines § 3C1.1 for defendant's obstruction of justice, to add two points to his offense level (see Docket No. 205, Gov't Post-Hearing Memo.; cf. Docket No. 91, Gov't Response at 3-12; see also Docket No. 123, Presentence Investigation Report (recommending this enhancement); Docket No. 95, Order, at 10-11 (denying enhancement)). With that enhancement, defendant's adjusted offense level of 16 (see Docket No. 110, Order at 2) would be increased to 18 and, with a criminal history category of I, defendant's sentence would become 27-33 months for each count. The Government renews its recommendation that defendant be sentenced to 27-33 months (Docket No. 205, Gov't Memo. at 61).

*Proceedings Following the Hearing*

Upon submission of defendant's reply (Docket Nos. 211-19), the matter finally was deemed submitted (Docket No. 220, Order of Feb. 26, 2010). The Court then issued an Order (Docket No. 222), United States v. Weisberg, No. 07CR66, 2010 WL 958486 (W.D.N.Y. Mar. 12, 2010), denying again defendant's motion for either a downward departure or for a non-Guideline sentence and also denying the Government's motions for enhancement of a Guidelines sentence and to strike defense affirmations. The Government, on March 29, 2010, moved for clarification of that Order on the issue of the parties' allocution rights at sentencing (Docket No. 223) and the Court vacated the March 12 Order (Docket No. 224). Further submissions and an amended PSR were ordered (id.; see Docket No. 225). Defendant (Docket No. 226) and the

Government (Docket No. 227) filed memoranda on whether this case should be reassigned; the Court denied reassignment (Docket No. 228).

Upon receiving the amended PSR, defendant filed his objection (Docket No. 229), renewing his objection to a portion of the original PSR restated in the amendment. During sentencing, the Government reaffirmed its objections regarding the denial of any enhancement of a Guidelines sentence for obstruction of justice. Defendant filed a further sentencing memorandum (Docket No. 231) and attorney's affirmation (Docket No. 232) identifying alternative sentencing options for the Court.

On September 21, 2010, the parties made their allocution and the Court sentenced defendant.

**DISCUSSION**

I.    Discretion in Sentencing

Judge Arcara remanded this case for sentencing because he found procedural errors in the sentence. In particular, Judge Arcara found that it was error to apply a presumption of reasonableness to the Guidelines range (Docket No. 172, Appellate Order at 8-10) and in denying a sentence outside of the advisory Guideline range before defendant appeared for sentencing (id. at 11). Judge Arcara held that it was error to presume that a within Guidelines sentence is to apply absent extraordinary circumstances (id. at 7-8; see Gall v. United States, 552 U.S. 38, 47 (2007)). He held that the Court need not have to articulate a specific policy disagreement with the Guidelines in order to impose a sentence outside of the Guideline range (id. at 10). The Court need only state "an adequate explanation" for imposing the sentence chosen (id.). The

Guidelines range is not to be deemed presumptively reasonable (id. at 8-9, citing Nelson v. United States, 555 U.S. ___, 129 S. Ct. 890, 892 (2009) (per curiam)[4]).

Essentially, the error found was that this Court did not exercise its full discretion in imposing sentence and it seemed overly reliant upon the sentencing scheme under the Sentencing Reform Act and the Sentencing Guidelines found advisory by United States v. Booker, 543 U.S. 220 (2005), and its progeny[5]. The Court is to consider the factors under the Sentencing Reform Act, 18 U.S.C. § 3553(a) (discussed below), and the Sentencing Guidelines and the advisory sentencing range, but it is not bound by the Guidelines or that range. As stated above, Judge Arcara held that "the Magistrate Judge was free to impose any sentence within or outside the advisory Guidelines range as long as he provided an adequate explanation for the chosen sentence and as the sentence chosen is substantially reasonable" (id. at 10) (emphasis added).

Judge Arcara noted that defendant did not object to the Sentencing Guidelines range here of 21 to 27 months, but only appealed from the sentence that applied that Guideline range (id. at 2, 6). Defendant has sought either a downward departure from the Guideline range or imposition of a non-Guideline sentence (see Docket No. 98). In light of this understanding of sentencing discretion, this Court considers the factors in entering the appropriate sentence here.

To be clear, the purpose of this proceeding is to meet the criteria set forth by Judge Arcara in reviewing the previous sentence imposed. The evidentiary hearing chiefly considered

---

[4]This case was decided January 26, 2009, after the initial sentence was imposed in this case.

[5]Kimbrough v. United States, 552 U.S. 85 (2007); Gall, supra, 552 U.S. 38 (2007); Rita v. United States, 551 U.S. 338 (2007); see also Nelson, supra, 555 U.S. at ___, 129 S.Ct. at 892 (reaffirming advisory nature of Guidelines, holding that Guidelines are not to be presumed reasonable by the sentencing court).

one factor in sentencing the defendant, whether his sentence should be adjusted in light of its impact on third parties (his daughter and his patients, and, as later discussed in sentencing, defendant's remaining staff), which entailed extensive testimony. Despite the post-hearing submissions to the contrary, this is not a case deciding the appropriate levels of chiropractic, medical or other care for Kirsten and defendant's patients; this case is not about Kirsten. It is unfortunate that the private affairs of the innocent bystanders have been brought with extensive detail before this Court for an otherwise discrete sentencing. Nevertheless, this Court has considered <u>all</u> submissions from defense and the Government and applied them in exercising its discretion in imposing the appropriate sentence upon defendant for the offenses of which he is convicted.

Federal Rule of Criminal Procedure 32(i)(3)(B) requires the sentencing Court to determine for any controverted matter either to rule on the dispute or find "that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." While there are numerous controverted issues of fact arising from this hearing, the Court deems much of them (for example, the appropriate care for Kirsten and defendant's patients), at bottom, will not affect sentencing and **will not be decided by this Court**.

II.      Factors under 18 U.S.C. § 3553(a)

The Sentencing Reform Act sets forth factors that must be considered in imposing a sentence. These include the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentenced imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to

afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, 18 U.S.C. § 3553(a)(1), (2). The Sentencing Reform Act also factors in the kinds of sentences and sentencing ranges available and policy statements from the Sentencing Commission, id. § 3553(a)(3), (4), (5), and seeks to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, id. § 3553(a)(6), and providing restitution to victims, id. § 3553(a)(7). Under the Sentencing Reform Act, the Court considers the Guidelines and the range it suggests, see Gall, supra, 552 U.S. at 50 n.6, and then determines (in exercising its discretion) whether or not to apply that advisory range. Thus, the Guidelines are the starting point and should inform the Court of each step in the sentencing process, see Gall, supra, 552 U.S. at 46; Kimbrough, supra, 552 U.S. at 108-09, but (as was found by Judge Arcara (see generally Docket No. 172, Appellate Order)), these Guidelines are not the end of the process in determining the appropriate sentence.

Defendant initially suggested alternatives to incarceration, such as community service or service in a halfway house and urged a non-imprisonment sentence (Docket No. 100, Def. Memo. at 28; see also Docket No. 231, Def. Re-Sentence Submission at 6-8). Defendant argued the harshness of his incarceration and how it "would adversely affect Kirsten Weisberg, the patients of the Aurora Wellness Center or its employees" (id.). The Government responded that a non-Guidelines sentence, including one without incarceration, would undermine deterrence (Docket No. 106, Gov't Response at 23-25, citing United States v. Cutler, 520 F.3d 136, 163 (2d Cir. 2008)). The Government concluded that

"to show leniency to this defendant after eight years of willfully failing to file tax returns, after engaging in the kind of evasion and tax obstruction he engaged in, and after he forced the Government to expend substantial resources in order to compel his compliance with what the law required, will only invite other tax scofflaws, if not honest people, to evade their tax obligations"

(id. at 24-25).

Following the re-sentencing hearing, the Government urges a sentence of 27-33 months while defendant seeks a sentence (either departing from the Guidelines or imposing a sentencing variance) that avoids defendant being incarcerated in prison but instead have placement in a halfway house (see Docket No. 219, Def. Memo. at 33) for an unspecified term.  At sentencing, the Government reaffirmed imposing a sentence at the maximum for the adjusted Guidelines range, of 27 months, due to the nature of the offense, general and specific deterrence, and defendant's history.

Both parties seem to use the Guidelines as the basis for the sentence (either imposing a sentence pursuant to them or to depart or vary from them) without recognizing (as had Judge Arcara) the Court's discretion to impose any rational sentence after considering what the appropriate sentencing range would be under the (now advisory) Guidelines regime.

A.      Government's Factors and Enhanced Sentence

The Court first considers the Government's motion for an enhanced sentence under the advisory Guidelines, since deciding defendant's ultimate sentence requires the Court to first consider what the sentencing range would be under the advisory Guidelines regime, see Gall, supra, 552 U.S. at 46; Kimbrough, supra, 552 U.S. at 108-09.

In addition to stressing the seriousness of defendant's offense and other factors to be considered in sentencing, the Government also has renewed (cf. Docket No. 93, Gov't Memo. in

Response to Defense Objections to Presentence Report at 3-12; Docket No. 95, Order at 10-11;

Docket No. 123, Presentence Investigation Report) its motion seeking an enhancement of the

sentence for obstruction of justice, this time on the additional ground that defendant allegedly

committed perjury during the re-sentencing hearing in exaggerating his role in Kirsten's care,

under advisory Guidelines § 3C1.1 (Docket No. 205, Gov't Post-Hearing Memo. at 31-37). The

Government argues that defendant mislead the Court as to the frequency of the chiropractic

treatments he administered to Kirsten since his conviction (id. at 31, 34-37), concluding that his

Guidelines sentence should be enhanced for this obstruction. Alternatively, the Government

argues that the sentence should be at the higher end of the advisory Guidelines range (27 months)

based on defendant furnishing incomplete or misleading information, Sentencing Guidelines

§ 3C1.1, appl. note 5(c) (id. at 33). At sentencing, the Government argued that the increased

number of defendant's treatments of Kirsten coincided with his pending sentencing. At the least,

the Government concludes that defendant acted to mislead the Court if not commit obstruction of

justice.

Defendant refutes this allegation and argues for a non-incarceration sentence by asking

whether the Court was misled as to the frequency of his chiropractic treatments of Kirsten (a

recast of the Government's issue) (Docket No. 219, Def. Memo. at 1). Defendant then outlines

the frequency of treatments he performed on Kirsten (id. at 2-4), including affirmations from his

wife (and Kirsten's mother), Daryl (Docket No. 216), and Dr. Stephan (Docket No. 217), to

refute the Government's contention that defendant overstated the frequency of these treatments

(Docket No. 219, Def. Memo. at 4-5).

Initially, defendant faced an advisory Guidelines sentencing range of 21 to 27 months (Docket No. 110, Order at 11-12; <u>see</u> Docket Nos. 95, 123), then was sentenced to 21 months (<u>see</u> Docket No. 125, Amended Judgment). Under the advisory Guidelines scheme, if an enhancement for obstruction of justice is added to the offense level and given defendant's criminal history, his sentence would be 27 to 34 months, a 13-month increase from the sentence initially imposed. But, as Judge Arcara noted, the Guidelines scheme, including its enhancement for obstruction of justice, is <u>advisory</u>; this Court is not bound to impose the Guidelines sentence even if it were enhanced for defendant's alleged obstruction of justice.

The Guideline regarding obstruction or impeding the administration of justice provides that

"If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or <u>sentencing</u> of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by two levels."

Guidelines § 3C1.1 (emphasis added). The commentary for this section notes as examples of covered conduct suborning or attempting to suborn perjury, <u>id.</u> Commentary 4.

The Supreme Court has noted that "not every accused who testifies at trial and is convicted will incur an enhanced sentence under § 3C1.1 for committing perjury. As we have just observed, an accused may give inaccurate testimony due to confusion, mistake or faulty memory . . . . Her testimony may be truthful, but the jury may nonetheless find the testimony insufficient to excuse criminal liability or prove lack of intent," <u>United States v. Dunnigan</u>, 507 U.S. 87, 95 (1993). This Court needs to review the evidence of alleged perjury and "make

independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition" set out by the Supreme Court, id. (see Docket No. 91, Def. Objections at 3-4.) Even if the proffered statements are seen to be perjurious, the Government fails to show that defendant willfully obstructed justice in making the statements, see United States v. Canova, 412 F.3d 331, 357 (2d Cir. 2005).

Here, the objectionable statement is the alleged misstatement of the frequency of defendant's chiropractic treatments of his daughter. This Court has reviewed the alleged perjurious statements and finds that **no perjury** has occurred to warrant an enhancement to the Guidelines sentence range. Whether defendant treated his daughter weekly or more frequently or misstated that frequency or duration of her care is not material to the underlying issue–the appropriate sentence for his crimes. Thus, the Government's renewed motion (Docket No. 205) for enhancing his Guidelines sentencing range is **denied**. As a result, the Guideline range that is the starting point for sentencing analysis here is 21 to 27 months, as was previously found.

Next, the Court considers defense arguments for a non-prison sentence (either as a downward departure or imposition of a non-Guidelines sentence) based upon defendant's practice and family obligations as well as other grounds he previously asserted.

B. Factors Raised by Defense Considered

Defendant has raised several different factors to warrant a sentence below the advisory Guideline range. He ultimately seeks a sentence of probation, that would facilitate his continued care for his daughter and continuation of his chiropractic practice. Prior to (see Docket Nos. 231, 232) and at sentencing defendant alternatively argues that, if incarceration must be imposed, he

seeks a sentence that would allow him to be incarcerated in a halfway house or other alternative form of incarceration.

The testimony at the hearing dealt primarily with the care needed by defendant's daughter Kirsten and the chiropractic care rendered to defendant's patients, with testimony (live and videotaped) from four of his patients. Defendant contends that the evidence shows that he is necessary in his daughter's and patients' well-being and care to warrant a downward departure or the justify imposition of a non-Guidelines sentence that did not involve incarceration. He questions the credibility of Dr. Lifeso's testimony to support Dr. Lifeso's conclusion that defendant's continued chiropractic care was not required by Kirsten or defendant's patients (including 106-year-old Marjorie Ernst). Defendant contends that the remainder of the Government's evidence is insufficient to support the conclusion that defendant's chiropractic services are unnecessary (Docket No. 219, Def. Memo. at 1).

1.      Defendant's Family Circumstances

Defendant argues that his disabled daughter Kirsten needs his constant professional services and care regardless of defendant's incarceration. As previously noted (Docket No. 110, Order at 9; Docket No. 116, Order at 9), at the outset Kirsten's situation in light of defendant's conviction appeared to be tragic.

Under the advisory Guidelines, family ties and responsibilities such as presented by defendant for his daughter were not relevant in determining whether to impose a sentence below the Guidelines range, Sentencing Guidelines § 5H1.6 (Docket No. 110, Order at 8; see Docket No. 106, Gov't Response at 5-6). "Because the Guidelines disfavor departure based upon family responsibilities, such a departure is not permitted except in extraordinary circumstances," United

States v. Smith, 331 F.3d 292, 294 (2d Cir. 2003), quoted favorably in Cutler, supra, 520 F.3d at 164.  In pre-Booker decisions, the Second Circuit had upheld extraordinary family circumstances where the defendant was the sole provider or sole caregiver to a needy family member or members, see Cutler, supra, 520 F.3d at 164 (citing cases finding such extraordinary circumstances, United States v. Galante, 111 F.3d 1029, 1035 (2d Cir. 1997); United States v. Johnson, 964 F.2d 124, 129-30 (2d Cir. 1992); and United States v. Alba, 933 F.2d 1117, 1122 (2d Cir. 1991)).

These cases, although citing the advisory Guidelines, did not consider the advisory nature of the Guidelines in the post-Booker world and the discretion held by the sentencing court in imposing a sentence.  In the exercise of that discretion, the Court may consider (among other factors) the impact of the sentence may have upon the defendant's dependents.  For example, in Cutler, while discussing extensively Booker and its progeny on the appellate review standard for sentencing, 520 F.3d at 154-58, the Second Circuit started from the Guidelines scheme and held that the bases for the district court's departures from that scheme (including for the impact upon relatives of the defendant) were not supported by the evidence, id. at 158-67 (sentence for Cutler), 167-75 (sentence for codefendant Freedman).  The court did not take the next step of determining whether the trial court gave an adequate, non-Guidelines explanation for the sentence imposed or noting the trial court's discretion to consider the impact of the sentence upon third parties in imposing sentence.  It was the sentences of both lead defendant Cutler, id. at 164-66, and of codefendant Freedman, id. at 171-72, that discussed the role of family responsibilities should have in sentencing, with Freedman's family situation very similar to defendant's care obligations to his family.  The Second Circuit in Cutler did not consider whether

the district court abused its discretion in considering those family situations in imposing sentence.  Since the Guidelines are just that, advisory guidelines, this Court may consider the impact of this sentence on defendant's family members.

The remand in this case calls upon this Court to exercise its full discretion, starting from the Guidelines and what the range of an advisory Guidelines sentence would be, to then impose a sentence the Court can adequately explain.  One part of this particular inquiry here (for defendant's downward departure motion[6]) is whether the claimed care obligations of the defendant for his daughter justifies a sentence outside the Guidelines range (to allow him to continue furnishing this care outside of prison) in the exercise of the Court's sentencing discretion.  From the evidence adduced at the hearing and review of the entire record herein (see discussion in Background above), this Court finds that defendant **is not indispensable** to Kirsten's care as to warrant the sentence sought and **denies** imposition of a downward departure. Substitute chiropractic care has been provided to Kirsten without apparent complaint or incident and similar substitute care was provided to some of the patient witnesses, with varying degrees of success.  The only expressed concern was that, due to her mental retardation, Kirsten may not accept a new practitioner or she may resist or act negatively toward change, and that testimony was the speculation of the chiropractor-narrator of defendant's video of Kirsten's treatment and her mother's post-hearing affirmation (cf. Docket No. 216, Daryl Weisberg Affirm. ¶¶ 11-15), coupled with defendant's familiarity with Kirsten and her condition and needs, while witnesses from Kirsten's group home and the service agencies testified that Kirsten has adjusted well to

---

[6]Defendant reiterated during sentencing that he also sought alternatively a non-Guidelines sentence, which is governed by a less stringent standard than seeking a downward departure.

other changes in her life.  Again, this case is not to determine whether Kirsten's care is optimal with or without her father present; the issue here is determining what the appropriate sentence is for the defendant and the offenses he committed.

2.     Defendant's Practice and Its Employees

Next, defendant contended that his 400 patients and then three employees of his practice (and now one single employee) needed him.  At oral argument for the initial sentencing, he noted that he was the only pediatric[7] chiropractor in this area and one of a few nutritionist chiropractors in this region, while the Government replied that the patients have other chiropractors they could turn to if defendant is incarcerated (Docket No. 106, Gov't Response at 12-13, Ex. A (telephone directory listing of chiropractors in Buffalo area)).  The Government argued that defendant's professional services are not sufficiently extraordinary to take the case out of the "heartland" for the appropriate sentencing range (id. at 11).  At the September 21, 2010, sentencing defendant and defense counsel stressed that defendant's patients and his remaining employee would be lost if he were incarcerated; defendant stated that his practice (including office space used by his wife for her profession) would fail and be lost if he is imprisoned.  Defendant noted that he was the sole medical provider for Ms. Ernst, the centenarian patient.

During the evidentiary hearing, defendant produced four of his patients (all adults) who each testified to the nature of his treatment of them, the duration of their care, and the need for continuation of care provided by defendant (see Docket No. 185, Def. Witness List at 1, 2; Hearing Def. Ex. 13).  They testified as to their respective needs for his skills as a chiropractor

---

[7]Aside the testimony surrounding Kirsten, there was no evidence surrounding defendant's pediatric practice or the number of pediatric patients that would be affected by this sentence.

and nutritionist. The Government produced Dr. Robert Lifeso and Dr. Benjamin Bartolotto who testified about the availability of other chiropractors in Western New York and (Dr. Lifeso) the necessity of chiropractic treatment for these patients (Docket No. 186, Gov't Witness List at 8-9, 7). The Government also offered as evidence licensing statistics for chiropractors in New York State, and Yellow Page advertisements of chiropractors in the area of defendant's practice (Docket No. 187, Gov't Ex. List, Exs. 27, 28-A to 28-E; Hearing Gov't Ex. 27). These experts found that defendant's treatment of the four witness patients was unremarkable and in some instances even unnecessary.

In his post-hearing papers, and as stated with Kirsten, defendant disputes the premises Dr. Lifeso uses to reach his opinions on the efficacy of chiropractic care generally (see Docket No. 219, Def. Memo. at 7-19; Docket No. 211, Def. Atty. Affirm.; Docket Nos. 212-15, Exs. to Def. Atty. Affirm.), and notes that Dr. Bartolotto found that defendant's testifying patients (and Kirsten) each received appropriate chiropractic care from defendant (Docket No. 219, Def. Memo. at 19).

Like family circumstances discussed above as regarding Kirsten, Sentencing Guidelines § 5H1.6 does not recognize a defendant's employment-related contributions as grounds for departure from the Guideline range (see Docket No. 110, Order at 9), Sentencing Guidelines §§ 5H1.2 (education and vocational skills), 5H1.5 (employment record), 5H1.11 (employment-related contributions, civic or charitable service).

But the issue here is determining the appropriate sentence to be imposed upon defendant, considering (as one factor) the defendant's chiropractic practice in setting that sentence. The particular dispute as to the efficacy of chiropractic treatment in general or for these patients (or

any one of them) in particular is not material to the ultimate sentencing decision. Should the dependence of defendant's patients warrant a reduced (from an advisory Guidelines range sentence) or non-incarcerative sentence? The evidence produced here indicates that chiropractic treatment, if necessary for these patient witnesses, could be provided by other practitioners but these patients insist upon defendant to be their chiropractor. As stated regarding Kirsten, while these patients each may prefer to have defendant as their chiropractor, it is not essential for defendant to furnish those services so as to require a lesser sentence. While defendant strenuously challenges the opinions of Drs. Lifeso and Bartolotto, there is no dispute that other chiropractors are available in this region that could serve these patients and (save possibly Ms. Ernst), their care needs are not so unique as to preclude professionals other than defendant from serving them. As with Ms. Ernst, there is an open question whether such treatment is even necessary, with Dr. Bartolotto testifying that chiropractic care may be counter indicative for her a patient of her age, but resolution of this issue is also not material to determining the ultimate question of defendant's sentence.

Thus, defendant's professional and family responsibilities **do not justify** granting a downward departure to impose a more lenient sentence.

### 3. Other Defense Factors

Previously, defendant invited the Court to consider his charitable and civic works as a factor (Docket No. 100, Def. Memo. at 19-22; see Docket No. 231, Def. Re-Sentence Submission at 3) and the overall egregiousness (or lack thereof) of the offense of conviction (Docket No. 100, Def. Memo. at 26; see Docket No. 203, Def. Post-Hearing Memo. at 1; Docket No. 231, Def. Re-Sentence Submission at 3) in sentencing him. The Government countered

relying upon the advisory Guidelines and their de-emphasis of the civil, charitable, public service or other good works of the defendant in departing or reducing the Guidelines range (Docket No. 106, Gov't Response at 13, 14), Sentencing Guidelines § 5H1.11. The Government also argued the seriousness of these offenses based upon defendant's conduct (both charged and uncharged) for a ten-year period (by ignoring warnings and admonitions to file his tax returns, engaging in evasive activities regarding his taxes, purporting to change his legal residence, sending funds to offshore accounts, and following the lead of American Rights Litigators and its strategy of evasion and pestering the IRS with queries about the legality of the income tax system) warrants the high end of the Guidelines range of 27 months (Docket No. 101, Gov't Sentencing Memo. at 1; Docket No. 106, Gov't Response at 17-23; see also Docket No. 205, Gov't Post-Hearing Memo. at 38-41).

Given the remand of sentencing and the mandate to have an adequate explanation for the sentence to be imposed that is substantially reasonable (cf. Docket No. 174, Appellate Order at 10), this Court considers the factors previously presented by defendant although not discussed during the evidentiary hearing and the Government's renewed arguments regarding sentencing as well as factors for enhancing his sentence for obstruction. Applying its discretion, the Court **does not consider** defendant's civic accomplishments a sufficient ground to affect his sentence.

In his latest sentencing submission, defendant lists additional factors to be considered in imposing sentence, his criminal history (with this case as the sole instance), his service in the United States Navy, his cooperation with the IRS during the investigation of the offense, his expressed remorse and acceptance of responsibility following his conviction (Docket No. 231,

Def. Re-Sentence Submission at 3). He contends that there is limited public deterrence in this case and he poses no risk of recidivism (id.), as he argued at sentencing.

C.     The Government's Motion to Strike Affirmations

The Government also moved to strike defense affirmations and associated exhibits (Docket No. 221). Again, this sentencing process is within the Court's discretion. To have as complete a record as possible, and to avoid any argument that the Court abused its discretion in not considering any material provided by the parties (even material that could have been produced at the hearing), the Government's motion to strike is **denied**, as it was declared in the earlier, vacated Order (Docket No. 222).

III.     Discretion and Determining Range

Defendant alternatively sought a non-Guidelines sentence, on the grounds discussed above. This Court has the discretion to impose a sentence with an adequate explanation whether that sentence comports with the advisory Sentencing Guidelines or not, provided the steps of first establishing what the proper Guidelines sentencing range was and consideration of factors under the Sentencing Reform Act occurred, again as considered above. One area not considered by the parties during re-sentencing is whether the Court should exercise its discretion to have the sentence for each count run consecutively (as required by the advisory Guidelines, § 5G1.2(d)) or concurrently with the other counts.

The Supreme Court in United States v. Booker held that the Sentencing Guidelines can not be imposed mandatorily, consistent with the Sixth Amendment rights of defendants, United States v. Booker, 543 U.S. 220, 244-67, 259 (2005) (opinion of Breyer, J.). The Court begins the sentencing process by considering what the Guidelines range would be for defendant's offense,

even though the statutory mandatory sentence for a § 7203 violation is one year in prison, I.R.C. § 7203; cf. U.S. Sentencing Guidelines Manual §§ 1B1.2(a), 1B1.9 (2007) (Sentencing Guidelines do not apply to Class B misdemeanors, of up to six months) (hereinafter cited as "Sentencing Guidelines").

As previously noted (see Docket No. 95, Order at 4-5), to determine the Guideline offense level for tax offenses such as the offenses of conviction here, the base offense level is calculated by looking at the tax table for the tax loss involved, Sentencing Guidelines § 2T1.1(a)(1). "If the offense involved failure to file a tax return, the tax loss is the amount of tax that the taxpayer owed and did not pay," id. § 2T1.1(c)(2); see id. § 2T1.1(c)(2) notes (A) ("if the offense involved failure to file a tax return, the tax loss shall be treated as equal to 20% of the gross income . . . less any tax withheld or otherwise paid, unless a more accurate determination of the tax loss can be made").

Under the advisory Guidelines scheme, and according to the evidence at trial, defendant's gross income in the tax years of conviction were $88,867 in 2000, $6,946 in 2001, and $63,349 in 2003. Twenty percent of the gross incomes for these years totals $31,632.40, and, under the 2007 Guidelines tax table (see Docket No. 95, Order at 7-10), the offense level for that tax loss is 14, id. § 2T4.1(E). Including tax year 2002 and its loss of $13,462.40 (the count for which the jury did not convict the defendant, see United States v. Meek, 998 F.2d 776, 781-82 (10th Cir. 1993)), the total tax loss is $45,094.80. Since the sentence must be within the range of a class A misdemeanor (up to one year), the relevant conduct considered in imposing that sentence need not be found by a jury, see Booker, supra, 543 U.S. at 233. The Court may find relevant conduct by the preponderance of the evidence, see United States v. Vaughn, 430 F.3d 518, 526-27 (2d

Cir. 2005). Under the 2007 tax table, the offense level remains at 14, Sentencing Guidelines

§ 2T4.1(E), but the PSR (Docket No. 123) considered relevant conduct of the tax years prior to

the ones charged in the Indictment (as well as the charged but not convicted conduct in

Count III), raising the offense level to 16.

   As a practical matter, this Court can only sentence the defendant for a maximum of one

year for each count of conviction for these misdemeanors. Under advisory Guidelines

§ 3D1.2(d), the three counts are grouped together, see id. (including offenses under §§ 2T1.1,

2T1.4 for grouping together), and would be considered consecutively in order to have a sentence

fall within the larger advisory range, id. § 5G1.2(d). Under advisory Guidelines § 5G1.2(d), "if

the sentence imposed on the count carrying the highest statutory maximum is less than the total

punishment, then the sentence imposed on one or more of the other counts shall run

consecutively, but only to the extent necessary to produce a combined sentence equal to the total

punishment," id. (emphasis added). "Total punishment" is the combined length of sentences

found from the adjusted combined offense level and the defendant's criminal history category, id.

cmt. n.1. Here, under the PSR the total punishment would have been 27 to 33 months[8], but the

Court declined to impose an enhancement to the offense level and defendant's range was 21 to

27 months. Defendant initially was sentenced to 21months, exceeding the twelve-month

maximum for each misdemeanor offense. To achieve a sentence within that Guideline range, the

_____

[8]With a criminal history category of I, the PSR and Government's calculation of an offense level of 18, defendant's sentencing range would have been 27 to 33 months, while defendant's calculation of an offense level of 13 with the same criminal history level would have a sentence between 12 and 18 months. Both of these sentencing ranges were within Zone D, precluding probation, Sentencing Guidelines §§ 5C1.1(f), 5B1.1, cmt. n.2; see Docket No. 123, PSR ¶ 65; Docket No. 95, Order at 6 & n.2.

initial sentence ordered the terms to be served consecutively, consistent with the advisory Guidelines (Docket No. 95, Order at 6-7).

In the post-Booker world, however, included in the advisory nature of the Guidelines is its former mandate that sentences run consecutively under Guidelines § 5G1.2(d) in order to achieve a higher sentencing range than is statutorily available. This Court has the discretion to impose a consecutive or concurrent sentence, United States v. Kurti, 427 F.3d 159, 164 (2d Cir. 2005); United States v. Aref, No. 04CR402, 2007 U.S. Dist. LEXIS 17926, at *17-18 (N.D.N.Y. Mar. 14, 2007) (McAvoy, J.), and need not impose a particular sentencing range. In Aref, Judge McAvoy declined to apply consecutive sentences in a terrorism case, finding that 180 months (rather than 292 months with each count aggregated for a consecutive sentence) was a reasonable and adequate sentence under the circumstances, Aref, supra, 2007 U.S. Dist. LEXIS 17926, at *17-19.

In this case, one of the factors in sentencing is the deterrence of other potential scofflaws that has to be weighed against the actual offense of which the defendant was convicted, and failing to file taxes for three years (cf. Docket No. 110, Order at 15 (noting that this case is not one of a prominent person flouting the law who could be made an example for broader deterrence)). This Court previously recognized (Docket No. 110, Order at 12; see also Docket No. 116, Order at 10) that defendant's advisory sentencing range was increased for not filing three of four years because that range also considered ten years of previous relevant conduct. Since this is also advisory in the post-Booker regime, the Court is not bound to impose a longer term merely to meet a now advisory Guidelines range. Hence, the three counts would be served **concurrently to each other**, in recognition of the seriousness of defendant's offenses (including

the relevant conduct noted by the Government), the disparity of sentences for similar tax

offenses, and to render a just punishment that is suitable for those offenses–specifically failure to

file tax returns for three tax years–and no more.

This Court has considered the factors required by the Sentencing Reform Act and the

extensive submissions of the parties, including

• the evidence presented at the sentencing hearing,
• the arguments made by the parties at every phase of this sentencing process, from the
    initial sentencing through the remand on appeal;
• the seriousness of the offense,
• the need to provide a just punishment for the offense, and
• the need to provide deterrence to criminal conduct.

Defendant, in his last sentencing memorandum (Docket No. 231, Memo. at 2-4) notes the

statutory factors to consider an appropriate sentence "which is sufficient, but not greater

than necessary, to satisfy the dictates of §3553" (id. at 2).  One additional factor he discusses is

the disparity in sentencing, noting several cases where district courts were upheld in imposing

sentences that vary from the Guideline ranges for offenses similar to failure to file tax returns,

concluding that other "courts have been willing to impose non-incarceratory sentences in this

post-Booker era that have been affirmed as an appropriate exercise of discretion on appeal" (id.

at 6, 3-6, citing United States v. Tomko, 562 F.3d 558, 561-64 (3d Cir. 2009) (en banc) (tax

evasion sentence reduced to one year of home confinement from Guidelines range of 12-18

months imprisonment); United States v. Gardellini, 545 F.3d 1089, 1090, 1091 (D.C. Cir. 2008)

(filing false tax return sentence of probation from Guideline range of 10-16 months); United

States v. Ruff, 535 F.3d 999 (9th Cir. 2008) (health care fraud, embezzlement, and money

laundering sentence of supervised release plus confinement in local corrections center from

Guidelines range of 30-37 months); United States v. Howe, 543 F.3d 128, 130 (3d Cir. 2008) (obstruction and making false statement to government personnel sentence of probation and three months of home confinement from Guidelines range of 18-24 months)). The D.C. Circuit Court of Appeals noted that, in the post-Gall sentencing world where "the Guidelines are truly advisory. Therefore, different district courts can and will sentence differently -- differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant," Gardellini, supra, 545 F.3d at 1096 (emphasis in original).

The Government, which filed no response to this memorandum, was on notice of defendant's disparity argument, the basis for the Court's sentence, cf. Fed. R. Cr. P. 32(h) (requiring notice of the Court's sua sponte grounds for departing from Guidelines range "not identified for departure either in the presentence report or in a party's prehearing submission").

A sentence at the maximum of the statutory range for misdemeanors, but below the advisory Guidelines range for these offenses, is appropriate here. First, as for the nature and seriousness of these offenses, defendant willfully failed to file tax returns over a prolonged period of time, while engaging in other (but uncharged) activities to avoid paying taxes or the full amount of taxes (creating sham trusts and moving assets to offshore accounts and becoming affiliated with American Rights Litigators). At the same time, defendant took precautions to have others around him comply with the filing requirements. While these are serious offenses, the Tax Code itself recognizes that other related offenses (such as tax fraud or tax evasion, I.R.C. §§ 7206, 7201) are more serious. The Guideline range here exceeds what is required for a just sentence because it factors in the amount of unreported taxes for the three years defendant was

convicted for, as well as other amounts under relevant conduct. Unlike other, more noteworthy defendants who had been recently convicted for failure to file tax returns[9], Dr. Weisberg did not urge others to follow his actions (in fact engaging in this conduct on his own and purposefully walled off his wife and employees from his scheme).

As for his history and characteristics, defendant is a professional person who knew his obligations, but had consistently found ways to avoid them (including invoking his child and patients to avoid the consequences of his action), and has shown little remorse for his actions, save his statements during sentencing. On the other hand, defendant does not appear to be a zealot in refusing to comply with his civic duty regarding taxes.

Finally, as for deterrence, this sentence (even if lower than the initial sentence ordered) still will give other taxpayers pause to consider whether to forsake their civic obligations and contest the regularity of the tax system by noncompliance. Sentencing as follows will not encourage other tax scofflaws.

This sentence calls for defendant's imprisonment. The term is within the range for probation, but to grant probation here would reinforce to defendant that he can evade the consequences for his actions.

The Court agrees with defendant's recommendation that, while defendant should be incarcerated, he should serve it in a halfway house rather than incarcerated in prison (see Docket No. 231, Def. Memo. at 6-8).

_____

[9]Wesley Snipes (appeal pending) and the ARL principals.

## CONCLUSION

For the reasons stated above, the Court exercises its discretion and will impose its sentence upon defendant with each count to be served **concurrent** with the others. The Government's renewed motion (Docket No. 205) for enhancing defendant's Guidelines sentencing range for alleged obstruction of justice during the pendency of this case (both at trial and during the sentencing proceeding) is **denied**. Upon re-sentencing pursuant to the mandate of the remand (Docket No. 172), defendant's motion (Docket No. 98) for a downward departure is **denied**, but his alternative motion for a non-Guidelines sentence is **granted** on the basis stated herein.

Therefore, it is the judgment of the Court that defendant **John Weisberg** is hereby committed to the Bureau of Prisons for **12 months on Count I, 12 months on Count II, and 9 months on Count IV all such counts to run concurrently for a total of 12 months**, it is recommended to the Bureau of Prisons that this sentence is to be served at the Buffalo Halfway House (see Docket No. 233, Amended Judgment). This sentence is to follow a term of supervised release, pursuant to the terms stated on the record during sentencing and incorporated in the Amended Judgment (Docket No. 233).

So Ordered.

                                   */s/ Hugh B. Scott*
                                  Honorable Hugh B. Scott
                                  United States Magistrate Judge

Dated: Buffalo, New York
        October 6, 2010